UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MARGARET HERSTER AND SCOTT       *
SULLIVAN,                        *    CIVIL DOCKET NUMBER: 13-139
    Plaintiffs               *
                                 *
VERSUS                           *
                                 *
BOARD OF SUPERVISORS OF          *   JUDGE: JAMES J. BRADY
LOUISIANA STATE UNIVERSITY,      *
ROD PARKER, KEN CARPENTER,       *
A.G. MONACO, JENNIFER            *   MAG:
NORMAND, MIMI RUEBSAMEN,         *   STEPHEN C. RIEDLINGER
AND KIMBERLY ARP,                *
    Defendants.              *
*******************************   *
                                 *

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT
PURSUANT TO RULE 12(b)(6)**

NOW COME the plaintiffs, Margaret Herster and Scott Sullivan, who hereby respond to

the defendants' motion to dismiss their complaint pursuant to Rule 12(b)(6).  As described

below, there can be no serious dispute that the plaintiffs' Complaint and First Amended

Complaint satisfy the liberal pleading requirements of Federal Rule of Civil Procedure 8 by

providing a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  The defendants' Motion to Dismiss generally concedes as much,

primarily focusing on arguments regarding which is the proper party for particular claims rather

than attempting to have the claims themselves dismissed.  Where the defendants do attempt to

have particular claims dismissed—by, for example, claiming qualified immunity—their

arguments are wholly lacking in merit and should be rejected, as shown below.

1

## I.    Summary of the Argument

The following list summarizes the plaintiffs' responses to the defendants' arguments. Plaintiffs list the responses according to their designation in the defendants' Memorandum in Support of Motion to Dismiss, Rec. Doc. #14-2.  Additionally, to assist the Court and the defense, the plaintiffs have attached a chart showing which claims are asserted against which defendants.  *See* Attached Exhibit A.

**III.B—Failure to State Loss of Consortium Claim.**  Plaintiff Sullivan has pleaded sufficient facts to allege loss of consortium, which is a claim for damages derivative of plaintiff Herster's substantive claims.  Claims for damages do not have to pleaded with particularity.  To the extent more allegations are needed, Sullivan has sought leave to amend the complaint pursuant to Rule 15(a)(2) as specified below.

**III.C.1-- Title VII and Equal Pay Acts are Time Barred, in Part.**  Plaintiffs have asserted harassment and creation of a hostile work environment under Title VII.[1]  These are continuing violations, and so incidents occurring prior to 300-days before filing the original EEOC charge are relevant.  Further, the statute of limitations for wage discrimination claims under Title VII is reset every time the employee receives a discriminatory pay check.

**III.C.2—Title VII Does Not Provide a Cause of Action Against Employees.**

The plaintiffs agree with this statement of law and affirm that their Title VII claims are against defendant LSU.

**III.C.3—Plaintiff Has Failed to Exhaust Administrative Remedies as to Some of Her Title VII Claims.**  Contrary to the defendants' assertions, plaintiff Herster's original EEOC charge did allege retaliation.  Furthermore, Fifth Circuit law provides that a plaintiff does not

---

[1] Plaintiffs have also asserted Title VII discrimination claims.

have to file a separate EEOC charge for retaliation where the retaliation arises out of the filing of the original charge. *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981) ("[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.").

In any event, plaintiff Herster filed a second, supplemental charge with the EEOC to include claims for and facts relating to retaliation. She seeks leave to amend the complaint to so specify.

**III.C.4—Plaintiff's Title VII Allegations Exceed the Scope of the Charge.** Plaintiffs are not required to state in their EEOC charge every particular allegation in support of their claim. Rather, they exhaust their administrative remedies when the acts they allege in their complaints could reasonably have fallen within the scope of an EEOC investigation. Here, plaintiff Herster's original EEOC charge alleged, in part, that "I have been subjected to sex-based harassment and hostile work environment by Rod Parker . . .". She also appended a letter report to her EEOC charge that detailed the discriminatory environment in the photography department and Parker's failure to do anything about. Therefore, the specified allegations would reasonably be expected to fall within the scope of an EEOC investigation into Herster's hostile work environment claim.

**III.D.1—LEDL Does Not Provide for Claims Against Individual Defendants.**

The plaintiffs agree with this statement of law and affirm that their LEDL claims are against defendant LSU.

**III.D.2—Plaintiff Cannot Seek Relief under LEDL for Retaliation.** Plaintiffs are aware of the law stating that the LEDL does not provide a cause of action for retaliation. Consistent with this understanding, no LEDL retaliation claim was included in their complaint.

**III.E.1—Plaintiff has Failed to State a Claim Under the Equal Pay Act Against Individual Defendants.**

Under the Fifth Circuit's "economic reality" test, plaintiffs have stated Equal Pay Act claims against individual defendants Parker, Carpenter, Monaco, Ruebsamen, and Normand.

**III.E.2—Equal Pay Act Claim is Time Barred, at Least in Part.** Herster has alleged an intentional violation of the Equal Pay Act, which has a three-year statute of limitations. The statute runs from each time an unequal payment is made. *Wang v. Prudential Ins. Co. of Am.*, 439 Fed. Appx. 359, 365 n.3 (5th Cir. 2011). Thus, every unequal paycheck that Herster received starting in January 2010 is an actionable violation.

**III.E.3—Failure to State a Claim under the Equal Pay Act**. The defendants contend that because Mr. Ostrenko was a tenure-track employee, he cannot serve as a male comparator for plaintiff Herster's EPA claim. This is a fact-based argument that is inappropriate for a motion to dismiss. The label (tenure track) that defendants gave to Mr. Ostrenko cannot automatically serve to insulate them from all EPA claims. Indeed, the EEOC has made clear that "job content, not titles or classifications, determines the equality of the jobs." Plaintiff has alleged all necessary elements for an EPA claim.

**III.F.1—Plaintiffs Fail to State a § 1983 Claim Against the Board of Supervisors Because it is Not a Person**. Plaintiffs agree with the defendants' description of the law and affirm that they have not brought a § 1983 claim against defendant Board of Supervisors.

**III.F.2—Plaintiffs Fail to State §§ 1983 and 1985 Claims Against Individual Defendants in their Official Capacities.** Plaintiffs have brought claims for prospective relief against defendants in their official capacities. These are permissible under the law. *See, e.g., Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

**III.F.3—Individual Defendants are Entitled to Qualified Immunity for §§1983 and 1985 Claims**. Plaintiffs have pleaded various violations of clearly established constitutional and statutory rights, as discussed below. Plaintiffs have cited cases showing that these rights were clearly established at the relevant times. Moreover, qualified immunity is an affirmative defense that is generally decided at the summary judgment stage, rather than on a Motion to Dismiss under Rule 12(b)(6).

**III.G.—Plaintiff has Failed to State a Retaliation Claim under the Family Medical Leave Act, and Individual Defendants are Entitled to Qualified Immunity for FMLA Claims.** The test the defendants describe for an FMLA retaliation claim applies only where the plaintiffs do not have direct evidence of FMLA discrimination. Here, one of the stated reasons for the defendants' decision not to re-new plaintiff Herster's contract was based on her taking FMLA leave. That constitutes direct evidence of FMLA retaliation. Further, plaintiffs are entitled to plead theories of relief in the alternative and the defendants are not entitled to qualified immunity.

**III.H.—Plaintiff Has Not Stated a Claim Against Individual Employees Under the Louisiana Whistleblower Statute, LA R.S. 23:967**.

Plaintiffs agree that the claim under LA R.S. 23:967 is against defendant LSU.

**III.I.—Plaintiff Has Not Stated a Claim for Intentional Infliction of Emotional Distress.**

5

Plaintiffs' allegations are sufficient to survive a motion to dismiss because, as set out in Louisiana law, defendants' conduct both independently and as part of a pattern or practice was outrageous and, given the underlying relationship between the parties and their awareness of surrounding circumstances, they knew or should have known that it would cause extreme emotional distress.

**III.J.—Plaintiff Has Not Stated a Defamation Claim Upon Which Relief May Be Granted.**   Plaintiffs have pleaded sufficient facts for a defamation claim.  To the extent they have not, they seek leave to amend their complaint.

## II.     Law and Argument

## A.     LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is disfavored and rarely granted.  *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.  *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (en banc).  Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.  *Id*.  Courts generally confine their analysis under Rule 12(b)(6) to the complaint and its proper attachments, which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct. *Id*.  Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the proper remedy is usually to allow the plaintiff to amend the complaint to cure any deficiencies, rather than

dismissal with prejudice. *Public Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc.*, 410 Fed. Appx. 738, 740 (5th Cir. 2010) (finding that district court erred in denying plaintiff's motion to amend complaint after dismissal under Rule 12(b)(6)).

**B.     PLAINTIFF SULLIVAN HAS STATED A CLAIM FOR LOSS OF CONSORTIUM**

In part III.B. of their memorandum in support of the Motion to Dismiss, Rec. Doc. 14-2, the defendants claim that plaintiff Sullivan has failed to allege sufficient facts to establish a loss of consortium claim. This argument fundamentally misapprehends the nature of a loss of consortium claim.

Loss of consortium is one category of damages recoverable under Louisiana's general provision establishing liability for acts that cause harm:

> A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
>
> B. **Damages may include loss of consortium, service, and society,** and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.

La. C.C. Art. 2315 (emphasis added).

The loss of consortium claim is much like a wrongful death claim, in that it arises as a result of an act that causes damage to another. *Landry v. Avondale Industries, Inc.,* 03-0719 (La. 12/03/03); 864 So. 2d 117, 126. Although it is its own cause of action, the underlying tort that must be pleaded in order to establish entitlement to recovery is the act causing damage to another, as well as that the plaintiff seeking recovery is within the class of persons to whom the loss of consortium claim is available. As the Louisiana Supreme Court has explained:

> The claim for loss of consortium is almost indistinguishable from the claim for wrongful death in that both causes of action are dependent on a primary tort to another person. Nonetheless, both claims are, beyond question, causes of action separate from any claim of the primary victim. The loss of consortium and

wrongful death claims are thus derivative only in the sense that the damages suffered by these claimants flow from their relationship with the primary tort victim.

*Landry,* 864 So. 2d at 126.

In this case, the plaintiffs have clearly pleaded that the defendants have committed a variety of torts against plaintiff Herster. They have also pleaded that these torts caused her a wide variety of damages, including mental and emotional distress, loss of income, and reputational damages. Furthermore, the plaintiffs have pleaded that plaintiff Sullivan is Herster's husband, which is a relationship for which loss of consortium damages are available. *See* LA C.C. Articles 2315 (establishing that loss of consortium damages are available to the same categories of persons as wrongful death damages) and 2315.1 (establishing that wrongful death damages are recoverable by surviving spouses). Accordingly, plaintiff Sullivan has pleaded sufficient facts to establish his claim for loss of consortium as a result of defendants' acts.

However, out of an abundance of caution, the plaintiffs seek leave to amend their complaint to include the following allegations relative to the loss of consortium claim:

**Paragraph 65:**

As damages for the above-described violations of law, plaintiff Sullivan seeks:

A.    **Damages for Loss of Consortium and Mental and Emotional Distress.** The defendants' actions have or will cause plaintiff Herster to suffer financial losses, including loss of employment income, whic is part of the community property existing between the plaintiffs. Further, Herster has suffered mental and emotional damages, including major depression, anxiety, and panic attacks, that have negatively impacted her ability to provide the usual advice, support, and services that are customary in the marital relationship. Additionally, the defendants' actions have caused plaintiff Sullivan a loss of love, attention and affection; loss of companionship; loss of material services; loss of support; and loss of aid and assistance. The loss of these elements of plaintiff Sullivan's relationship with plaintiff Herster has resulted in plaintiff Sullivan suffering his own emotional damages.

8

B. Any and all other damages available in law and equity that may be shown to be reasonable after a trial of this matter.

## C. PLAINTIFFS HAVE STATED CLAIMS UNDER TITLE VII.

### 1. Plaintiffs' Title VII Claims Are Not Time Barred.

In section III.C.1. of the defense memorandum, the defendants argue that the plaintiffs describe incidents relating to their Title VII and Equal Pay Act claims that occurred prior to the relevant statutes of limitations for these claims. They assert that the plaintiffs' discrimination claims must be dismissed to the extent that they rely on these incidents.

As an initial matter, it must be noted that a plaintiff is not required to plead facts sufficient to defeat every possible affirmative defense that could be raised. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). A statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1); *Frame v. City of Arlington*, 657 F.3d 215, 240-41 (5th Cir. 2011) ("[T]he statute of limitations is an affirmative defense that places the burden of proof on the party pleading it. Under federal pleading requirements, which we follow, a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations.") (quotations and citations omitted). Accordingly, a motion to dismissed under Rule 12(b)(6) should be granted only if the facts supporting the statute of limitations defense are evident on the face of the complaint itself. *See Jones v. Alcoa*, 339 F.3d 359, 366 (5th Cir. 2003). Here, that standard is not met.

### Title VII

The plaintiffs have consistently pleaded that defendant Parker's hostile, discriminatory treatment of plaintiff Herster persisted throughout her employment with defendant LSU. *See, e.g.,* Rec. Doc. 1-2 at ¶ 11 ("Throughout her employment at defendant **LSU**, petitioner Herster

has been subjected to continuing sex-based harassment and verbal abuse by defendant

**PARKER**); Rec. Doc. 1-2 at ¶ 13 ("Throughout her employment at **LSU**, **PARKER** has also

repeatedly screamed at and threatened petitioner Herster in an entirely in appropriate manner.");

Rec. Doc. 1-2 at ¶ 14 ("Furthermore, **PARKER** has consistently excluded petitioner Herster

from information and decision-making positions."). Thus, at this stage of the proceedings, the

statute of limitations defense should not be applied to dismiss claims based on these allegations.

That being said, plaintiffs agree with defendants that a Title VII plaintiff in Louisiana

must file an EEOC charge within 300 days of the alleged discriminatory act.[2]  However, the

plaintiffs in this case have pleaded harassment and creation of a hostile work environment under

Title VII.  Rec. Doc. 1-2 at ¶ 62 B.  For these types of Title VII violations, a plaintiff may rely on

a "continuing violation" theory that can encompass acts occurring both within the limitations

period and before it. *Amtrak v. Morgan*, 536 U.S. 101, 115 (2002).  As the Supreme Court

explained in *Morgan*,

> "Hostile environment claims are different in kind from discrete acts.  Their very
> nature involves repeated conduct . . . The 'unlawful employment practice'
> therefore cannot be said to occur on any particular day.  It occurs over a series of
> days or perhaps years and, in direct contrast to discrete acts, a single act of
> harassment may not be actionable on its own . . . Therefore, It does not matter, for
> purposes of the statute, that some of the component acts of the hostile work
> environment fall outside the statutory time period.  Provided that an act
> contributing to the claim occurs within the filing period, the entire time period of
> the hostile environment may be considered by a court for the purposes of
> determining liability.

*Id*. at 115-17.  Thus, under a continuing violation theory, the court may consider the

entire pattern of harassment so long as one of the harassing acts occurs within the limitation

---

[2] Oddly, the defendants argue in a later section of their memorandum that the actual limitation
period in Louisiana is 180 days. See Rec. Doc. 14-2 at 9. As explained further below, the
limitation period in Louisiana is in fact 300 days, as the defendants in fact argue in Section
III.C.1.

period. *Id*.

The Fifth Circuit has found just three limitations on *Morgan's* continuing violation doctrine:

> First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts.  Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window.  Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.

*Stewart v. Mississippi Transp. Comm.*, 586 F.3d 321, 328 (5th Cir. 2009) (quotations and citations omitted).

The plaintiffs' Complaint sets forth sufficient facts to survive these challenges.  First, the plaintiffs have pleaded a sufficiently related series of acts.  The Fifth Circuit has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights.  *Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir. 1998).

Plaintiff Herster alleges that, throughout the course of her employment at defendant LSU, one supervisor, Rod Parker, consistently belittled and degraded her, through words and deeds, because she was a woman.  Her complaint provides numerous examples of this hostile, gender-based conduct, which is all of the same or similar character.  For example, Parker excluded her from faculty meetings in 2009, outside the limitations period.  Rec. Doc. 1-2 at ¶ 14.  But he also excluded her from decision-making roles in 2011, within the limitation period.  *Id*.  Similarly,

11

Parker directed derogatory, gender-based comments towards plaintiff both inside and outside of the limitation period. Rec. Doc. 1-2 at ¶¶ 12-13. And he treated her as if she were not a part of the faculty both within and outside of the limitations period. Rec. Doc 1-2 at ¶ 15. Parker did not treat similarly situated men this way. Rec. Doc. 1-2 at ¶¶ 11-15. Furthermore, these acts were all of the nature of recurring events—indeed, it is the plaintiffs' allegation that they did in fact recur, again and again. Finally, none of the acts were of such a permanent nature (eg. demotion or termination) that they should have alerted her that her rights were being violated. *See, e.g., Morgan*, 536 U.S. at 121 (hostile work environment claim based on numerous racial jokes and derogatory comments directed at plaintiff).

The other two requirements for a continuing violation theory are also met in this case. The plaintiffs' Complaint does not contain facts that would suggest that Parker's discriminatory activities were anything less than continuous; in fact, they allege just the opposite. Furthermore, at this stage in the proceedings, there are no equitable reasons to preclude the plaintiffs from relying on the continuing violation theory. Therefore, the defendants' request to dismiss the plaintiffs' discrimination claims based on acts occurring outside the limitation period should be rejected.[3]

"**Equal Pay Act**"

Defendants also claim in this section of their memorandum that plaintiffs' claims for unequal pay are time-barred. Although the defendants label the target of these arguments plaintiffs' "Equal Pay Act" claims, the plaintiffs understand the defendants to be targeting the

---

[3] Furthermore, as the Supreme Court noted in *Morgan*, any discriminatory acts falling outside the limitation period can be used as background support for claims based on acts falling within the limitation period. *Morgan*, 536 U.S. at 113.

plaintiffs' claims for discriminatory pay under Title VII in this section. However, it should be noted that the Equal Pay Act is its own statute, and not part of Title VII. *Compare* 29 U.S.C. § 206(d) (Equal Pay Act) *with* 42 U.S.C. § 2000e et seq. (Title VII).[4]

In any event, the plaintiffs have stated a viable claim against defendant LSU for violation of Herster's rights under Title VII by discriminating against her in the amount she was paid. This claim is covered by the Lilly Ledbetter Fair Pay Act of 2009, which amended Title VII to provide that a cause of action for wage discrimination accrues each time a plaintiff is paid a discriminatory wage. *See* 42 U.S.C. § 2000e-5(e)(3)(A). In other words, each discriminatory payment resets the statute-of-limitations clock for the discriminatory activity that caused the discriminatory payment to occur. Under current law, it does not matter that the discriminatory activity occurred outside the limitations period, so long as the plaintiff received a discriminatory payment based on that activity within the limitations period. *See McReynolds v. Merrill Lynch Co.*, 694 F.3d 873, 888 (7th Cir. 2012) (explaining Ledbetter Act "affects when discriminatory practices may be challenged by extending the statute of limitations every time a pay-check is issued").

Herster has alleged that she received discriminatory payments within the 300 day period before she filed her EEOC charge. *See, e.g.,* Rec. Doc. 1-2 at ¶ 19. Thus, Herster's Title VII wage discrimination claim is timely. It does not matter that the discriminatory act that caused the wage differential may have occurred outside the 300 day period. 42 U.S.C. §2000e-5(e)(3)(A); *McReynolds*, 694 F.3d at 888.

---

[4] Arguments regarding plaintiffs' Equal Pay Act claims are addressed in section E, below.

## 2.    Plaintiff Agrees that Title VII Does Not Provide a Cause of Action Against Employees.

In part III.C.2 of their memorandum, the defendants argue that Title VII does not provide a cause of action against individual employees.  Plaintiffs agree with this statement of law and affirms that the Title VII claims are directed at her employer, defendant LSU.[5]

## 3.    The Plaintiff Has in Fact Exhausted Her Administrative Remedies for Title VII Retaliation, as She Alleged Title VII Retaliation in Her Initial EEOC Charge and in a Second, Supplemental Charge in September 2012.

In part III.C.3 of their memorandum, the defendants argue that the plaintiffs have failed to exhaust administrative remedies for their Title VII retaliation claim.  However, under Fifth Circuit law, a Title VII plaintiff is not required to file a separate EEOC charge for retaliation where the retaliation arises out of the filing of the original EEOC claim.  In *Gupta v. East Texas University*, the Court held as follows: "[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."  654 F.2d at 414.

In any event, plaintiff Herster did claim Title VII retaliation in her charges to the EEOC. She did so in both her first charge and then in a second, supplemental charge filed in September 2012.  The September 2012 charge explicitly set forth the additional acts of retaliation that she had suffered by that time, including her termination.

---

[5] However, as described in section II.F.3 below, Herster has brought § 1983 claims against the individual defendants in their individual capacities for violation of her Equal Protection rights through sex-based harassment, hostile-work environment, and discrimination.

The September 2012 EEOC charge was timely.  Contrary to the defendants' arguments in this section of their brief, the time limit for filing an EEOC charge in Louisiana is 300 days. *Granger v. Aaron's*, 636 F.3d 708, 709 (5th Cir. 2010).  This is because Louisiana is a "deferral state," meaning a state that has its own administrative body established to review claims of discrimination.  *Connor v. La. Dept. Health and Hosp.*, 247 Fed. Appx. 480, 481 (5th Cir. 2007).  Furthermore, a Louisiana resident is **not** required to submit their claim to the Louisiana Commission on Human Rights before relying on the 300-day limitation period.  That is because the Louisiana Commission on Human Rights has a working agreement with the EEOC whereby a charge filed with the EEOC is considered as simultaneously filed with the LCHR.  *Id*. at 481.

Although unnecessary under the law, in the interest of efficiency and putting the matter to rest, the plaintiffs have sought leave to amend their complaint as follows:

**Paragraph 22**

In December 2011, Herster filed a complaint alleging sexual discrimination, harassment, and retaliation against **PARKER** with the Equal Employment Opportunity Commission.  In this charge, she listed numerous discriminatory acts, including but not limited to Parker's failure to remedy pervasive sex-based harassment in the School of Art's photography department.  On December 22, 2011, **NORMAND** informed Herster that resolution of her complaints of sexual discrimination and harassment by **PARKER** would be delayed because LSU had "received notice of the charge of discrimination filed by you or on your behalf with the EEOC."  As outlined by EEOC guidance, delaying or otherwise inhibiting access to internal grievance procedures based upon the filing of a charge with the EEOC is retaliatory.  Herster subsequently filed a second and supplemental EEOC charge in September 2012.  This EEOC charge informed the EEOC of the retaliation that she had suffered as a result of filing the original EEOC charge, including but not limited to her notice of non-reappointment in April 2012.

**4.    Plaintiffs' Current Allegations Do Not Exceed the Scope of Her EEOC Charge.**

In section III.C.4 of their memorandum, defendants argue that two particular allegations in the plaintiffs' Complaint exceed the scope of the EEOC charge. Specifically, the defendants claim that the plaintiffs' allegations regarding hostile, sex-based harassment by male faculty members and "funny business in the darkroom" exceed the scope of her EEOC charge. This is incorrect.

The Fifth Circuit's standard for determining when particular allegations are encompassed by an EEOC charge is: "[T]his court interprets what is properly embraced in review of a *Title-VII* claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mintea*, 448 F.3d 783, 788 (5th Cir. 2006) (quotations and citations omitted).

Here, plaintiff Herster's original EEOC charge alleged, in part, "I have been subjected to sex-based harassment and hostile work environment by Rod Parker . . .". Furthermore, Herster appended to the EEOC charge a complaint she had filed with LSU's Human Resources Management office, which detailed many of the facts regarding Parker's hostile attitudes towards women, including the problems in the photography department and his failure to address them. That charge was sufficient to prompt an investigation into the particular allegation targeted by the defendants because, as alleged in the Complaint, Herster informed defendant Parker about these allegations, he acknowledged the issues, and yet he did nothing to rectify the situation. Indeed, Parker's response was that Herster was at the liberty "of the boys." Rec. Doc. 1-2 at ¶ 13. Thus, the plaintiffs have alleged that Parker, Herster's supervisor, tacitly approved of and

condoned the sex-based, hostile work environment generated by the "boys" in the photography department. It is reasonable to expect the EEOC's investigation into Parker's creation of a hostile work-environment would encompass such allegations, especially considering that Herster in fact informed the EEOC of them.

**D.    LOUISIANA EMPLOYMENT DISCRIMINATION LAW**

**1.    Plaintiffs Agree that LEDL Does Not Provide a Claim Against Individual Defendants.**

In section III.D.1 of their memorandum, defendants contend that the LEDL does not provide a cause of action against the individual defendants. Plaintiffs agree with this statement of law and affirm that the LEDL claims are directed at her employer, defendant LSU.

**2.    Plaintiff Agrees that the LEDL Does Not Provide for Retaliation Claims.**

Plaintiffs are aware that courts have held that the LEDL does not provide a claim for retaliation. They affirm that they have not asserted such a claim in their complaint.

**E.    THE EQUAL PAY ACT**

**1.    Plaintiffs have Pleaded Sufficient Acts to Support Claims under the Equal Pay Act Against Individual Defendants Carpenter, Parker, Monaco, Normand, and Ruebsamen.**

In part III.E.1 of their memorandum, defendants claim plaintiff Herster failed to state a claim against the individual defendants under Equal Pay Act (EPA), because defendants maintain none of the individual defendants qualify as her "employer" under the Fifth Circuit's "economic reality" test. Although plaintiffs agree defendant Arp does not qualify as an "employer," the facts as alleged in the complaint are sufficient to show that all other individual defendants qualify as "employers" under the relevant case law.

17

Defendants correctly state that "employer" in the EPA context is defined in the Fair Labor Standards Act (FLSA), which defines employer as, "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 USC §203(d). In *Reich v. Circle C. Investments, Inc.*, the Fifth Circuit discussed its FLSA employer analysis:

> The FLSA's definition of employer **must be liberally construed to effectuate Congress' remedial intent**. This court has held that the FLSA's definition of employer is 'sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.'

998 F. 2d 324, 329 (5th Cir. 1993) (emphasis added) (citations omitted).

Keeping in mind the liberal application Congress intended, the Fifth Circuit examines four factors to determine whether an individual is an employer within the meaning of the FLSA, and by extension the EPA: (1) power to hire and fire; (2) supervision and control of employee work schedules or conditions of employment; (3) control of the rate and method of payment; and (4) maintenance of employment records. *See, e.g., Martin v. Spring Break '83 Productions, LLC,* 688 F. 3d 247 (5th Cir. 2012).

Plaintiffs' Complaint pleads sufficient facts to support a claim that defendants Parker, Carpenter, Monaco, Ruebsamen, and Normand are "employers" under the Fifth Circuit's "economic reality" test, particularly when the actions of each individual are considered in light of the Reich's standard for "effective domination of administrative or other acts." Defendants Parker, Carpenter, Monaco, Normand, and Ruebsamen individually meet each of the four criteria to demonstrate their effective domination of administrative or other acts in relation to Herster's employment at LSU:

18

***Defendant Parker***:  Parker was the Director of the LSU School of Art, located in the College of Art + Design.  Parker and the previous Dean of the College of Art + Design were directly and primarily involved in the process to hire plaintiff Herster, including in the negotiation of her contract, satisfying the first prong of the EPA analysis.  Rec. Doc 1-2 at ¶ 5. With regard to prongs two and three of the analysis, Parker was plaintiff Herster's direct supervisor, and in that position had control over duties assigned to her, workload, and compensation.  Rec. Doc. 1-2 at ¶ 7.  Parker named plaintiff Herster "Area Coordinator" for the School's Digital Art area, which substantially increased her work duties, without any corresponding increase in compensation.  *Id*.  In fact, defendant Carpenter acted with Defendant Parker to reduce her percentage effort with University administration, which resulted in denying her access to University benefits.  Rec. Doc. 1-2 at ¶ 9.  Herster met with Parker on several occasions to discuss the disparities in her duties, title and pay.  Rec. Doc. 1-2 at ¶ 10.  In these meetings, Parker justified the logic behind her pay rate and job title by comparing Herster to another female employee in the department.  Parker's justification for Herster's pay rate and job title suggests that he bore significant responsibility for each of these aspects of Herster's employment, satisfying the second and third prongs of the analysis.

Parker was also responsible for assigning plaintiff Herster to a windowless office, and for excluding her from faculty votes and area coordinator meetings, all of which tend to support that Parker had significant control over plaintiff Herster's day to day conditions of employment. These facts further support defendant Parker's "employer" status in the second prong of the analysis.  Rec. Doc. 1-2 at ¶¶ 14–15.

Lastly, Parker was at least partially responsible for assembling the employment records on plaintiff Herster that were distributed prior to the faculty vote on Herster's reappointment.

Rec. Doc. 1-2 at ¶ 40. Parker omitted positive material that should have been considered, evidencing considerable control over Herster's employment records, thereby satisfying the fourth prong of the analysis. *Id*.

The facts pleaded in the plaintiffs' Complaint thus more than adequately establish that Parker should be considered Herster's employer for EPA purposes.

***Defendant Carpenter***: Carpenter is the Dean of the LSU School of Art + Design. With regard to the first prong of the analysis, Carpenter's predecessor participated in the negotiations to hire plaintiff Herster, indicating that in the position of Dean, he has hiring power. Rec. Doc. 1-2 at ¶ 5. Additionally, it was Defendant Carpenter who informed Herster of the decision not to reappoint her. Rec. Doc. 1-2 at ¶ 43. LSU policy required Defendant Carpenter to review any appeal of any re-appointment decision, further supporting Defendant Carpenter's hiring and firing power, satisfying prong one of the analysis. Rec. Doc. 1-2 at ¶ 46.

With regard to the second and third prongs of the analysis, as Dean of the School, Carpenter had ultimate authority over duty assignments, including the number of classes each instructor would teach and at what rate of pay. Rec. Doc. 1-2 at ¶ 5. Furthermore, as Dean, defendant Carpenter had to sign off on plaintiff Herster's employment contract, which included specific information regarding her workload and compensation for the semester. Rec. Doc. 1-2 at ¶ 5. In the hiring negotiations, Carpenter's predecessor had engaged in discussions involving the nature of Plaintiff Herster's potential duties and role in the AVATAR interdisciplinary digital media program, further suggesting that as Dean, Carpenter had control over Herster's duty assignments. Rec. Doc. 1-2 at ¶ 5. Additionally, defendant Carpenter acted with defendant Parker to reduce Herster's percentage effort with University administration, which resulted in denying her access to University benefits, effectively reducing her compensation. These acts

20

further show Carpenter's close involvement with Herster's compensation, satisfying the third prong.  Rec. Doc. 1-2 at ¶ 9.

Finally, with regard to the fourth prong of the analysis, Carpenter had control over Herster's employment records, specifically the minutes of the faculty meeting at which she was not reappointed and the memorandum of reasons explaining why she was not reappointed.  Rec. Doc. 1-2 at ¶ 43.

***Defendants Monaco, Ruebsamen, and Normand***:  These defendants are all members of LSU's Human Resources Management office.  Defendant Manaco is the Associate Vice Chancellor for LSU's Human Resources Management office.  Defendant Ruebsman is the Executive Director of LSU's Human Resources Management office.  Defendant Normand is the Director of Employee Relations in the Human Resources Management office.  Each of these defendants exercised sufficient control over the administrative aspects of plaintiff Herster's employment to support individual EPA claims against each as an "employer."

When plaintiff Herster appealed the non-reappointment decision, defendant Carpenter informed her that defendants Normand, Ruebsaman and Monaco would handle the review.  Rec. Doc. 1-2 at ¶ 46.  Plaintiffs believe defendant Carpenter was acting under instructions from defendants Normand, Ruebsaman, and Monaco.  *Id.*  This role in the review of non-reapointment decisions is tantamount to firing power, satisfying the first prong of the employer test.

Defendants Normand, Ruebsamen, and Monaco each influenced the conditions of plaintiff Herster's employment substantially.  First, although Herster's non-reappointment does not take effect until May 2013, defendant Monaco informed Herster that she had been effectively banned from the LSU campus and could not visit without approval from the Human Resources Management office.  Rec. Doc. 1-2 at ¶ 55.  Additionally, the defendants in the Human

Resources Management office effectively had complete control over Herster's ability to access resources at LSU, as shown by the fact that she was denied access to electronic media, including email, per their order.  Rec. Doc. 1-2 at ¶ 55.

Second, plaintiff Herster informed defendant Normand of her serious problems with defendant Parker, including conduct that caused her concern for her safety.  Rec. Doc. 1-2 at ¶ 13.  However, soon after plaintiff Herster's letter reporting the potential irregularities in course fees, Normand informed Herster that the Human Resource Management office had closed the internal investigation into her allegations of sexual discrimination.  Rec. Doc. 1-2 at ¶ 36.  This decision was within the purview of the three individual defendants.  Finally, in the same letter, defendant Normand informed Herster that faculty members in her position were not usually entitled to the voting rights she had previously enjoyed, despite the fact that Herster regularly voted on all matters before the faculty prior to Normand's intervention.  *Id*.

Given their apparent ability to control plaintiff Herster's access to campus, maintain and close investigations into grievances, and strip Herster of her voting rights, defendants in the Human Resource Management office had significant control over the conditions of Plaintiff Herster's employment, and accordingly meet the second prong of the EPA analysis.

With regard to the third and fourth prongs of the analysis, the defendants in the Human Resources Management office controlled administrative functions to ensure pay and benefits were commensurate with work duties.  They also maintained employment records.  Defendants Carpenter and Parker acted through University administration, including the Human Resources Management office, to reduce Herster's percentage effort in order to deny her benefits from the University.  Rec. Doc. 1-2 at ¶ 9.  Plaintiff Herster met with the Human Resources Management office, including the named defendants, regarding her pay and benefits.  Rec. Doc. 1-2 at ¶ 13.

The meeting  indicates that these defendants had at least some control over Herster's compensation, satisfying the third prong of the analysis.  Additionally, defendants in the Human Resources Management office had control of Plaintiff Herster's personnel files.  Rec. Doc. 1-2 at ¶ 44.  In fact, defendant Normand removed material from Herster's personnel file, showing the substantial level of control defendants in the Human Resource Management office had over Herster's employment files.  These facts satisfy the fourth prong of the EPA analysis.  *Id.*

In sum, defendants Parker, Carpenter, Normand, Ruebsamen, and Monaco all meet the criteria for "employers" set out by the Fifth Circuit.  Accordingly the EPA claims against these individuals as employers should remain.  Plaintiffs agree that defendant Arp does not meet the criteria to be considered an employer.

### 2.      Plaintiffs' Equal Pay Act Claim is Not Time Barred.

In part III.D.2 of their memorandum, defendants claim that the plaintiffs' Equal Pay Act claim is time-barred with respect to payments she received prior to Janaury 23, 2011.  The statute of limitation for an Equal Pay Act violation is two years, unless the violation is willful, in which case the statute is three years.  29 U.S.C. § 255(a).

Plaintiffs have alleged that the defendants herein acted intentionally and/or maliciously.  Rec. Doc. 1-2 at ¶ 24.  The Federal Rules of Civil Procedure provide that such states of mind may be alleged generally.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  Thus, the three-year limitation period for Equal Pay Act violations applies.[6]  Accordingly, Herster's claim for Equal Pay Act violations extends back to January 23, 2010.

---

[6] Plaintiffs note again that part of the damages for violation of Title VII is the difference between what Herster actually received in salary versus what she would have received absent

### 3.      Plaintiff Has Stated a Claim Under the Equal Pay Act.

In part III.D.3 of their memorandum, the defendants contend that the plaintiffs have failed to state a claim under the Equal Pay Act.  Essentially, they contend that because Mr. Ostrenko, a male comparator cited in the plaintiffs' Complaint, enjoyed the label "tenure-track," plaintiffs cannot make out a prima facie case for violation of the EPA.  This argument is incorrect.

As defendants point out, to establish a prima facie case for violation of the EPA, a plaintiff must alleged three elements: (1) the employer is subject to the EPA; (2) the plaintiff performed work in a position requiring equal skill, effort, and responsibility under similar working circumstances; and (3) the plaintiff was paid less than the employee of the opposite sex providing the basis for comparison.  29 U.S.C. § 206(d).

Here, plaintiff Herster has alleged facts establishing each of these elements.  First, she alleges that LSU was her employer.  Rec. Doc. 1-2 at ¶ 4.  Second, she alleges that she and Mr. Ostrenko had similar "assigned duties, work load, and work conditions."  Rec. Doc. 1-2 at ¶ 19. Third, Herster alleged that Ostrenko was paid $28,000 more than she was despite the similarities in their assigned duties, work load, and work conditions.  *Id*.  Furthermore, Herster has alleged that she was also paid less than other male comparators.  Rec. Doc. 1-2 at ¶ 16.  Accordingly, under the liberal pleading regime of Federal Rule of Civil Procedure 8, the plaintiffs have stated a prima facie case for violation of the EPA.

---

discrimination.  Claims for these damages are not time-barred because of the Lilly Ledbetter Fair Pay Act, which provided that each discriminatory payment resets the clock for statute of limitations purposes.  42 U.S.C. § 2000e-5(e)(3)(A).

Although the defendants contend that Herster cannot compare herself to Mr. Ostrenko because his position was called "tenure track," while hers was not, this is a fact-based argument that is inappropriate for a motion to dismiss. To make out a claim for an EPA violation, a plaintiff does not have to show that she had the same title as the male comparator. Indeed, both the EEOC and courts have explained that what matters in the EPA analysis are the employee's "assigned duties, work load, and work conditions," and not a particular title. *See* EEOC Compliance Manual, Ch. 10-IV (*Compensation Discrimination in Violation of the Equal Pay Act* at 10-IV(E)(2) ("In comparing two jobs for purposes of the EPA, consideration should be given to the actual duties that the employees are required to perform. **Job content, not job titles or classifications, determines the equality of jobs.**"); *EEOC v. The Hernando Bank, Inc.*, 724 F. 2d 1188, 1196 (5th Cir. 1984) ("The operative test is whether a woman is paid less for a job 'substantially equal' to a man's; **the test relates to job content rather than to job title or description."**) (emphasis added).

As alleged in the complaint, Herster's and Ostrenko's positions were in fact similar in all relevant ways—they worked in the same department, were held to the same standards, and were required to exert similar levels of effort in order to meet similar responsibilities. Rec. Doc. 1-2 at ¶ 19. In fact, Parker named Herster area coordinator for digital art, a position commonly reserved for tenure-track professors and which involved significantly more responsibilities than Ostrenko had. Rec. Doc. 1-2 at ¶ 7. And yet Ostrenko was paid $28,000 more than Herster. Accordingly, the plaintiffs have alleged a prima facie case for violation of the EPA. That is all that is required to survive a motion to dismiss under Rule 12(b)(6).

Plaintiffs acknowledge that an EPA claim is subject to the defenses described in the defendants' brief, e.g., that a wage differential is the result of a seniority or merit system.

25

However, as the defendants themselves note, once the plaintiff has established a prima facie case, the burden shifts to the defendants to prove one of the affirmative defenses. *King v. Univ. Healthcare Sys. LC*, 645 F.3d 713, 724 (5th Cir. 2011) (explaining that in EPA cases, defendant has burden of production and persuasion relating to affirmative defense). *See also EPCO Carbon Dioxide Prods., Inc.,* 467 F.3d at 470 (holding that plaintiff is not required to plead facts to defeat possible affirmative defenses). Clearly, the defendants here have not offered any proof of one of these affirmative defenses. Allegations in a brief on a motion to dismiss cannot be taken as evidence. *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1336 (5th Cir. 1980).

Although plaintiffs believe they have sufficiently pleaded claims for EPA violations, they have also sought leave to amend their complaint to add an additional paragraph, as follows:

**Paragraph 62**

Throughout her employment, Herster was paid substantially less than male counterparts with lower qualifications and substantially similar job responsibilities and work conditions.

Full-time faculty members at LSU are all expected to engage in teaching courses, producing scholarship (such as exhibitions), and University service (typically through various ad hoc projects and participation in departmental, college, or University committees). While Herster was assigned, and performed, all of these responsibilities, male faculty members assigned the same tasks, such as Frederick Ostrenko and Jesse Allison, were paid substantially more due to their gender.

In fact, Herster's assigned responsibilities exceed those undertaken by Mr. Ostrenko and Mr. Allison. In addition to the typical full-time faculty responsibilities, Herster was also required to carry out "area coordinator" responsibilities for the digital art program. As area coordinator Herster advised students majoring as to course selection, "tracked" all digital art majors to ensure the appropriate courses were offered to ensure timely graduation, managed and processed course requirement alterations, and proposed changes to the area curriculum, in addition to other substantial administrative tasks.

**F.      PLAINTIFFS HAVE STATED CLAIMS UNDER 42 U.S.C. §§ 1983 AND 1985**.

**1.      Plaintiffs Agree that there are No Claims Under §§ 1983 and 1985 against Board of Supervisors because the Board of Supervisors is not a "Person."**

In part III.F.1, defendants argue that defendant LSU Board of Supervisors does not qualify as a "person" under 42 U.S.C. §§ 1983 and 1985.  Plaintiffs agree.  Therefore, no claims against the Board are brought under these sections.

**2.      Plaintiffs State Claims against Defendants Parker, Carpenter, Monaco, Normand, Ruebsamen, and Arp, Acting in their Official Capacities, under 42 USC §§ 1983 and 1985.**

In part III.F.2 of their memorandum, defendants argue that the plaintiffs cannot bring claims against individual defendants in their **official** capacities pursuant to §§ 1983 and 1985. Defendants assert that these individuals are employed by a state agency, and are therefore immune from suit under §§ 1983 and 1985.  This is only partially correct— the individual employees may be sued in their official capacities for prospective relief, but not for money damages.

Beginning with the Supreme Court's ruling in *Ex Parte Young*, 209 U.S. 123 (1908), federal courts, including the Fifth Circuit, have made clear that Eleventh Amendment immunity does not protect state actors from claims for prospective relief when they have violated federal law.  *Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 482 (5th Cir.2008); *Brennan v. Stewart,* 834 F.2d 1248, 1253 (5th Cir.1988); *Edelman v. Jordan*, 415 U.S., 663 (1974).  In the employment context, prospective relief specifically includes reinstatement.  *Nelson v. University of Texas*, 535 F. 3d 318, 322 (5th Cir. 2008) (*citing Meekins v. Foster,* No. 99-30583, 2000 WL 423356 (5th Cir. Apr. 3, 2000)).  *See also Warnock* in *Sternadel v. Scott,* No. 00-50106, 2001 WL 563628 (5th Cir. May 7, 2001).  Plaintiff Herster seeks equitable and prospective relief of

27

reinstatement and/or reasonable front pay.  R. Doc. 1-2 at ¶ 64.A.  Accordingly, the claims against the individual defendants in their official capacities should remain.

### 3.    The Individual Defendants' Conduct Violated Clearly Established Law Such That They are Not Entitled to Qualified Immunity.

In part III.F.3 of their memorandum, the defense contends that the individual defendants, sued in their individual capacities, are entitled to qualified immunity because the plaintiffs have not alleged violations of clearly established law.  The defendants do not specify to which of Herster's § 1983 claims this argument is directed.  Although plaintiffs concede that there is no § 1983 action for defamation, and so withdraw that theory of relief, the remainder of their § 1983 claims are based on law and rights that were clearly established during the relevant time period.

In her Complaint, First Amended Complaint, and now in her proposed Second Amended Complaint, plaintiffs allege the following violations of Herster's civil rights.  As explained and shown below through case citations, each of these rights was clearly established at the time of the violation.

The plaintiffs first note that the defendants badly misconstrue the test for when a right is "clearly established" for purposes of the qualified immunity analysis.  Directly contrary to the defendants' arguments, the Fifth Circuit has **not** held that "An official's conduct is protected by qualified immunity unless the very action in question has been held unlawful."  Rec. Doc. 14-2 at p. 22.  In fact, the Fifth Circuit (and the U.S. Supreme Court) hold just the opposite of this assertion:  "It had already been known since *Anderson* that the 'clearly established' standard does **not** mean that officials' conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'"  *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis added).

The correct inquiry for qualified immunity is whether, at the time of the official's act, the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). With this standard in mind, plaintiffs turn to the individual rights they allege were violated in this case.

a. **Violation of her First Amendment Right to Free Speech and Association.** Herster claims she engaged in activity protected by the First Amendment, namely, her right to speak on matters of public concern and associate with others. Rec. Doc. 1-2 at ¶¶ 55-56, 62 F. That right was clearly established at the time. *See, e.g., Slagle v. Edna Independent Sch. Dist.*, 411 F.3d 178, 185 (5th Cir 2005) (holding that school district violated employee's rights by terminating her for exercising First Amendment rights). Defendants violated Herster's First Amendment rights by retaliating against her after she spoke out regarding unlawful course fee and other issues and associated with others for the purpose of doing so. Rec. Doc. 1-2 at ¶ 53-56. Specifically, Herster alleges that she met with current and former students to discuss the illegal course fee issues as well as other improprieties at the School of Art. Rec. Doc. 1-2 at ¶ 53. This group decided to make a documentary regarding their experience at LSU, focusing on the impact on students of LSU's financial improprieties and problematic educational models. Rec. Doc. 1-2 at ¶ 54. When the defendants learned of this project, they engaged in a pattern of retaliation against Herster, including cutting off Herster's access to electronic resources,

including email, and banning her from coming on to the LSU campus. Rec. Doc. 1-2 at ¶ 55.

It was clearly established at the time of these violations that a state official could not retaliate against someone for exercising their First Amendment rights to free speech and association. *Slagle,* 411 F.3d at 185. Furthermore, on the face of the Complaint, it is clear that the speech for which Herster was retaliated against should receive full First Amendment protection. That speech included meeting with and helping current and former students make a documentary about their experience of LSU's financial improprieties and problematic educational model, which tended to benefit entrenched faculty at the expense of students. Herster engaged in this speech with current and former students during the summer break, outside of classroom time, both on and off campus. Given these circumstances, Herster made this speech as a citizen on a matter of public concern. *Id. See also Van Heerden v. Board of Supervisors of La State. Univ.,* 3:10-CV-155 (M.D. La. 10/20/2011); 2011 U.S. Dist. LEXIS 121414, *17 (denying defendant's motion for summary judgment on First Amendment retaliation claim where former professor's speech to media, although related to his field, was made in capacity of private citizen).

b. **Violation of Due Process in Relation to the Termination of Employment**. Herster claims that defendants denied her due process in relation to the non-reappointment decision. It was clearly established at all relevant times that state actors cannot deprive persons of life, liberty or property without due process of law. *Gentilello v. Rege,* 627 F.3d 540, 544 (5th Cir. 2010).

Complaint Paragraphs 44 through 51 are relevant to plaintiffs' due process claims. As stated in these paragraphs, LSU has written policies governing the procedures, including appeal procedures, for termination of a faculty position like professional-in-residence.[7] Although employment in Louisiana is generally at-will, where there are written policies and procedures governing employment actions, an employee has a protected property interest in these policies. *Driscoll v. Struther*, 04-0589 (La. 01/19/05); 893 So. 2d 32, 42 ("Existing rules or understandings stemming from independent sources such as state law create and shape what property interests are subject to due process protection under the Fourteenth Amendment. Explicit contractual provisions or other agreements implied from the promissor's words or conduct in light of the surrounding circumstances may also create property interests."). *See also Glover v. Smith*, 478 Fed. Appx. 236, 240 (5th Cir. 2012) (holding that "mutually explicit understandings can give rise to property interests under Louisiana law"). LSU's written policies regarding non-reappointment of a professional-in-residence afforded Herster a property right in having her position terminated only in accordance with those policies. As described in the Complaint, paragraphs 44 to 51, the individual defendants violated these policies in numerous ways, including: (1) removing materials from her personnel file; (2) forwarding her appeal to LSU's Human Resources Management, instead of the proper individuals in the academic chain of command; (3) reconvening a second faculty panel to reconsider non-reappointment; (4) depriving Herster of the five working days to which she was entitled to consider appealing decisions; (5) and denying Herster the right to appeal directly to the University Provost. Furthermore, as an overarching matter, it was a

---

[7] The relevant policy is PS-36-NT.

violation of due process for defendants to have her fired for her whistle-blowing activities, which are protected by law.  Herster has therefore enunciated a violation of her clearly established right to due process.

**c.    Violation of Her Right Not to Be Discriminated Against Based on Her Sex.**

Plaintiffs' proposed Second Amended Complaint articulates the theory that the individual defendants violated § 1983 by engaging in unlawful discrimination, harassment, and retaliation based on sex.[8]  It was clearly established at the time of these violations that state actors, such as public employees, could not engage in sex-based discrimination, harassment, and retaliation in violation of federal laws.  *See, e.g., Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment.").

**d.    Violation of §§ 1983 and 1985 Based on Conspiracy to Violate Each of these Rights**.

It was clearly established at all relevant times that state actors cannot conspire to violate someone's civil rights.  *See* 42 U.S.C. § 1985 ("If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.").

---

[8] To forestall any potential argument that prescription has run on this theory, plaintiffs note that "if a plaintiff seeks to correct a technical difficulty, **state a new legal theory of relief**, or amplify the facts alleged in the prior complaint, then relation back is allowed." *FDIC v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994) (emphasis added).

Thus, each of the rights Herster alleges the individual defendants violated was clearly established at the time of the relevant actions. The defendants' arguments to the contrary should be rejected.

## G.  PLAINTIFFS HAVE STATED A CLAIM FOR RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT, AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

In section G of their memorandum, the defendants claim that the plaintiffs have failed to state a claim for retaliation under the FMLA. Because plaintiffs (1) allege direct evidence of retaliation under the FMLA and (2) are entitled to plead theories in the alternative, this Court should reject the defendants' argument.

The plaintiffs allege that the defendants based their decision not to re-appointment Herster on the fact that she had to withdraw from teaching a particular class during the Fall Semester of 2011. Rec. Doc. 1-2 at ¶ 51. Plaintiffs' allegations flow directly from the second non-reappointment letter Herster received, which explicitly stated that this was one of the reasons for non-reappointment. *Id*. However, the reason why Herster had to withdraw from that particular class was her exercise of FMLA leave, which was certified and approved by the University and of which all defendants were aware. Rec. Doc. 1-2 at ¶ 21, 51. Therefore, by explicitly basing their decision to terminate her on her failure to teach that class, the defendants admitted that their decision to terminate her was based at least in part on the exercise of leave under the FMLA.

This direct evidence of retaliation under the FMLA makes the burden-shifting analysis the defendants propose inapt. Although defendants concede that the plaintiffs have alleged that Herster was protected under the FMLA and suffered an adverse employment decision, Rec. Doc. 14-2 at 24, they contend that her claim must be dismissed because she has not pointed to a

comparator who has not taken FMLA leave and was treated more favorably. Where, however, there is direct evidence, such as a written admission, that defendants made an adverse employment decision based on an employee taking FMLA leave, there is no need to cite a comparator in order to make a prima facie case. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (noting that burden-shifting analysis applies where there is no direct evidence of FMLA retaliation). Instead, to make out a prima facie case based on direct evidence of FMLA retaliation, a plaintiff is required only to allege facts showing: "(1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge." *Id.*

That is exactly what the plaintiffs have alleged here: The defendants explicitly stated that the non-reappointment decision was based in part on Herster's withdrawing from teaching a particular class. Herster's withdrawal from the class was the result of her protected exercise of rights established under the FMLA and approved by the University. Rec. Doc. 1-2 at ¶¶ 21, 51. Thus, the defendants have essentially stated that the non-reappointment decision was based at least in part on her exercise of rights under the FMLA. Plaintiffs' allegations therefore establish a prima facie case for FMLA retaliation. Nothing more is required to survive a motion to dismiss under Rule 12(b)(6).

Furthermore, at the early pleading stage, before a plaintiff has had the opportunity to engage in discovery, plaintiffs are entitled to plead alternative theories of recovery. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Therefore, there is nothing improper about the plaintiffs in this case pleading that Herster's non-reappointment was motivated by both FMLA retaliation as well as Title VII and whistleblower retaliation.

The defendants also claim to be entitled to qualified immunity for the FMLA claim. Plaintiffs understand the defendants' argument to be that the defendants were not aware that they were violating the FMLA. However, it was clearly established at the relevant time that an employee of a state agency can be individually liable for FMLA retaliation. *Modica v. Taylor*, 465 F.3d 174, 187 (5th Cir. 2006). To the extent that the defendants claim that they were not aware of Herster's exercise of FMLA leave, that is a factual matter appropriate for summary judgment, and not a motion to dismiss. The plaintiffs have alleged facts from which it is plausible to infer that at least part of the reason for Herster's non-reappointment was because of the necessary consequences of her taking FMLA leave, ie. withdrawing from teaching a class. That is all that is required to survive a motion to dismiss under Rule 12(b)(6). *See Bellow v. Board of Supervisors of La. State Univ.*, No. 12-cv-1529 (E.D. La. Dec. 21, 2012), 2012 U.S. Dist. LEXIS 181512, *24 (holding that it was objectively unreasonable to fire employee because she took FMLA leave).

### H.     PLAINTIFF AGREES THE 23:967 CLAIM IS AGAINST LSU

In part H of their memorandum, defendants contend that the only proper defendant for Herster's claim under 23:967 is her employer, defendant LSU. Plaintiffs agree with this assessment of the law.

### I.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In section III.I of their memorandum, the defendants contend the plaintiffs have failed to state a claim for intentional infliction of emotional distress. This is incorrect.

In Louisiana, the tort of intentional infliction of emotional distress is available where individuals have suffered mental or emotional harm. The Louisiana Supreme Court has noted that Louisiana possesses a "broad and more flexible notion of fault" that is more expansive than

that of other states due to provisions within the state's civil code. *See White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991) (referencing LSA-C.C. Art. 2315). Accordingly, a plaintiff may recover for intentional infliction of emotional distress upon establishing that (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Id.

Tellingly, defendants do not dispute that plaintiff Herster suffered severe emotional distress and thus satisfies prong (2) of the test. As such, the only question is the intermingled issue of the "outrageousness" of defendants' conduct and their intent or knowledge of emotional harm.

Defendants argument as to "outrageousness" presupposes the absence of any relationship or position of authority between the parties. However, Louisiana law is clear that an act which may not be outrageous to a stranger can in fact be outrageous when the tortfeasor engages in "abuse by the actor of a position . . . which gives him actual or apparent authority over the other, or power to affect his interests." *Id*. at 1209-10. In such cases, the victim possesses a "greater degree of protection from insult and outrage by a supervisor." *Id*. at 1210. Additionally, even mild harassment can become outrageous if it is repeated over an extended course of time. *Bustamento v. Tucker*, 607 So. 2d 532, 538 (La. 1992).

The Louisiana Supreme Court has recognized that, in the employment context, an intentional infliction of emotional distress claim is viable in "cases involving a pattern of deliberate, repeated harassment over a period of time." *Id*. As demonstrated above and throughout the Complaint, such a pattern is precisely what plaintiff Herster has alleged. Moreover, as set out in the Complaint, the persistent and pervasive harassment Herster endured,

36

in fact, directly caused the emotional damage she suffered and which necessitated her use of leave provided under the Family Medical Leave Act.

Defendants' argument that their conduct lacked the requisite intent is likewise unfounded. Louisiana courts have repeatedly held that plaintiffs must establish actual intent to cause emotional damage or that defendants knew that emotional distress would be substantially certain to occur. As set out in the Complaint, all of the defendants were aware of plaintiff Herster's leave request as well as the major depression and anxiety disorder that precipitated her leave request and required continuing care. Likewise, all of the defendants were aware that the medical issues requiring her to take leave flowed from the harassing behavior she had endured. As described above, the "outrageousness" of a defendant's conduct must be viewed within the context of the relationship of the parties. Likewise, an assessment of one's knowledge that his behavior is "substantially certain" to cause emotional distress has to reflect the context of both the tortfeasor's authority over the other as well the tortfeasor's knowledge of the plaintiff's emotional vulnerabilities.

Finally, under Fifth Circuit precedent, courts are to assess the satisfaction of the above prongs liberally. Within that vein, the Fifth Circuit has held that it was error for a district court to dismiss an intentional infliction of emotional distress claim where plaintiff pleaded only the basic facts surrounding her termination. *See Walker v. South Central Bell Telephone Co.*, 904 F.2d 275, 278-79 (5th Cir. 1990). Plaintiffs' extensive and detailed Complaint far exceeds such a low standard and should be permitted to move forward to discovery.

Defendants also note that the prescription period for an intentional infliction of emotional distress claim is one year. However, where, as here plaintiffs allege a pattern of harassment, then the continuing violation doctrine applies to the intentional-infliction-of-emotional-distress tort.

37

*Bustamento*, 607 So. 2d at 538-39. Therefore, acts occurring outside the one-year period may be considered. As described in section II.C.1, above, the continuing violation should apply here.

### J.        PLAINTIFFS HAVE STATED A PRIMA FACIE CASE FOR DEFAMATION

In their Complaint and proposed Second Amended Complaint, plaintiffs allege that, on information and belief, individually named defendants called plaintiff Herster "crazy" and other derogatory names. Rec. Doc. 1-2 at ¶ 57. Upon further information and belief, defendant Parker has made defamatory statements regarding Herster's personal and professional character to multiple students and others. Rec. Doc 1-2 at ¶ 11. These statements have negatively effected Herster's reputation within the community and caused her harm. *Id*.

These allegations are sufficient, at the Rule 12(b)(6) stage, to state a claim for defamation under Louisiana law. Defamation is a tort that involves the invasion of a person's interest in his or her reputation and good name. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129, 132. There are four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Id*.

Plaintiffs have alleged facts sufficient to make a prima facie showing on each of these elements. First, and contrary to the defendants' arguments, Rec. Doc. 14-2 at pp. 31-32, calling Herster "crazy" and other similar slanders is not a pure statement of opinion. Instead, it is defamatory per se. As Louisiana courts have explained, "[w]ords which expressly or implicitly accuse another of criminal conduct, **or which by their very nature tend to injure one's personal or professional reputation,** even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se." *Costello*, 864 So. 2d at 140 (emphasis added).

Clearly, calling a University professor "crazy" would by its very nature tend to injure the professor's personal and professional reputation. *See Lamartiniere v. Daigrepont*, 168 So. 2d 370, 372 (3d Cir. 1964) (finding that calling someone "crazy," among other epithets, was defamatory per se). *Cf. Bonnet v. Theriot*, 491 So. 2d 703 (3d Cir. 1986) (calling attorney a "drunk" was defamatory per se.).

Second, plaintiffs have alleged that Parker made his defamatory comments to students and others. Additionally, in their proposed Second Amended Complaint, plaintiffs allege that, on information and belief, defendants have made these comments to students and others. Such utterances are unprivileged.

The third and fourth elements of the defamation tort, fault and injury, are presumed when the words are defamatory per se. *Costello*, 864 So. 2d at 140. *Zeigler v. Housing Authority of New Orleans,* No. 2012-1168, 2013 BL 113053 (La. 4 Cir. 4/24/2013) (holding that statements tending "injure one's personal or professional reputation are considered defamatory per se," and "elements of falsity, injury, and malice are presumed").

### K.    SHOULD THE COURT BELIEVE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED, PLAINTIFFS REQUEST LEAVE TO AMEND THEIR COMPLAINT.

By separate motion, plaintiffs have sought leave to amend their complaint as described above. For the same reasons as articulated in that motion—namely, absence of undue delay, bad motive, prejudice to the defense, or futility of the amendment—the plaintiffs propose that the proper course, should this Court determine that the plaintiffs have failed to plead a claim on which relief may be granted, would be to permit further amendment to the complaint pursuant to Rule 15(a)(2) rather than dismissal. *See Public*, 410 Fed. Appx. at 741 (reversing where district court dismissed complaint under Rule 12(b)(6) without permitting opportunity to amend).

39

## Conclusion

For the aforesaid reasons, the plaintiffs respectfully request that the defendants Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) be denied.


Respectfully submitted,


/s/ Stephen Haedicke


_____

STEPHEN J. HAEDICKE (#30537)
The Law Offices of Stephen J. Haedicke, LLC
639 Loyola Ave., #1820
New Orleans, LA 70113
Telephone:  504-525-1328
Fax:  504-910-2659

-AND-


GARY W. BIZAL (La. Bar # 1255)
639 Loyola Ave., Ste. 1820
New Orleans, LA 70113
(504) 525-1328
(504) 525-1353 (fax)
piblaw@bellsouth.net

-AND-


ELIZABETH CUMMING, # 31685
316 S. Dorgenois Street
New Orleans, LA 70119
Tel. 504-822-4455
Fax. 504-822-4458

## *CERTIFICATE OF SERVICE*

I hereby certify that on May 2, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

/s/ Stephen J. Haedicke