UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MARGARET HERSTER AND
SCOTT SULLIVAN

CIVIL ACTION

VERSUS

NO. 13-139-JJB

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY, *ET AL.*

## RULING ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a motion to dismiss filed by Defendants Board of

Supervisors of the Louisiana State University and Agricultural and Mechanical College ("LSU"),

Rod Parker ("Parker"), Ken Carpenter ("Carpenter"), A.G. Monaco ("Monaco"), Jennifer

Normand ("Normand"), Mimi Ruebsamen ("Ruebsamen"), and Kimberly Arp ("Arp"). (Doc.

14). Plaintiffs Margaret Herster ("Herster") and Scott Sullivan ("Sullivan") have filed an

opposition. (Doc. 20). Oral argument is not necessary. For the reasons herein, the Court

GRANTS the motion in part and DENIES the motion in part. (Doc. 14).

I.

The following facts are taken from the complaint (Doc. 1), the first amended complaint

(Doc. 3), and the second amended complaint (Doc. 22) and are accepted as true for the purposes

of this motion. *See Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012). Plaintiffs Sullivan

and Herster are married and employed by LSU. In early 2009, Sullivan and Herster entered into

employment negotiations with LSU. On or about June 1, 2009, Sullivan was employed as an

assistant professor at LSU's law school. On or about August 17, 2009, Herster was employed by

the LSU School of Art. Herster negotiated her contract with Parker, the Director of the School of

1

Art and Herster's supervisor, and her starting salary was $25,000. Herster believed that she was hired for an instructor position in the AVATAR interdisciplinary digital media program.

When Herster began her employment, Parker introduced Herster as the "Area Coordinator" for the School's Digital Art program, a new area affiliated with the AVATAR research program. Herster alleges that she was unaware that she was expected to be an Area Coordinator because it was a "labor-intensive faculty service position that is customarily assigned to tenure and tenure-track professors who receive far greater pay than . . . $25,000 a year." (Doc. 1, ¶ 7). Herster further alleges that Parker indicated that she was the "Digital Art faculty" and that he expected her to develop a new program without adequate resources to do so.

Herster met with Parker to discuss her title, salary, and conditions of her employment and Parker indicated that he was working to improve her salary, which Herster alleges was not true. During these meetings, Parker allegedly made "demeaning, sexist comments . . . and questioned [Herster] about her interest in babies." (Doc. 1, ¶ 8). In September 2009, Herster learned that Parker assumed that she would receive health insurance through Sullivan's insurance plan and Carpenter (the Dean of the College of Art + Design and Parker's supervisor) and Parker "acted to reduce her 'perfect effort' . . . divesting Herster of access to University benefits." (Doc. 1, ¶ 9). In October 2009, Parker and Herster met again to discuss her responsibilities and salary and Parker explained that he set her title and pay because he believed that she was a "trailing spouse."[1] (Doc. 1, ¶ 10).

In December 2010, Herster was promoted to Professional-in-Residence pursuant to a faculty vote and her salary was increased to $41,000. Herster asserts that this salary was below that received by her male counterparts. Herster alleges that throughout her employment, Parker

---

[1] Parker allegedly stated that he believed Herster would be like the other "trailing spouse," Jackie Parker, who "teaches a few classes, takes care of her children and is happy." (Doc. 1, ¶ 10).

subjected Herster to continuing sex-based discrimination and harassment and offensive, sexist remarks. Additionally, Herster asserts that Parker excluded Herster from information, decision-making, and consideration for a joint-tenure track position despite Herster repeatedly expressing her interest in the position. Parker also excluded Herster from the interview process for the position and hired a male candidate, Dennis Ostrenko ("Ostrenko"), who Herster alleges is significantly less qualified for the position than she is. Despite the difference in qualifications but the similarities in work load and responsibilities, Ostrenko's starting salary was $53,000, which was $28,000 more than Herster's starting salary and $12,000 more than her current salary of $41,000.

In August 2011, due to the ongoing harassment and unfavorable treatment, Herster was diagnosed with major depression and panic disorder. She requested leave pursuant to the Family and Medical Leave Act ("FMLA") and on September 1, 2011, her request was approved. In December 2011, Herster filed a complaint against Parker with the Equal Employment Opportunity Commission ("EEOC"). On December 22, 2011, Normand informed Herster that "resolution of her complaints . . . would be delayed" because LSU had received notice of the EEOC charge. (Doc. 1, ¶ 22).

In addition to the alleged sex-based discrimination and harassment, Herster asserts that she was retaliated against because she reported that the School of Art had required students to pay illegal course fees and Parker misappropriated these fees. Herster alleges that LSU assesses course fees to students for certain classes and for art classes, these fees are collected for the materials that students use in the class. Pursuant to Article VII, Section 2.1 of the Louisiana Constitution, any new fees or an increase in fees must be approved by the state legislature.

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 3 of 27

Herster alleges that LSU course fees constitute fees subject to the legislative approval requirement and the course fees that Parker imposed on the students had not been approved.

Herster further alleges that Parker and Carpenter knowingly provided false information to public officials when seeking re-approval of existing fees and the School of Art has misappropriated or misused the course fees. For instance, Herster asserts that the fees were used to purchase iPads, Apple computers, and scanners for faculty use. Additionally, some of the fees are deposited in the School of Art's general operating account, which is spent at Parker's discretion.

Herster reported these concerns to Carpenter, the Dean of the College of Art + Design, via a letter dated February 11, 2012. Both Herster and Sullivan reported these concerns to the LSU System Office of Internal Audit, which began an investigation in February 2012. On January 10, 2013, the Internal Auditor published a report, finding that Herster and Sullivan's allegations were correct.

Herster asserts that less than a week after she reported her concerns to Carpenter, Normand informed Herster via letter that he and the LSU Human Resources Management office closed their investigation into her sex-based discrimination allegations against Parker. Normand also informed her that she "had been stripped of faculty voting rights." (Doc. 1, ¶ 36). Additionally, on or about February 23, 2012, Carpenter told Parker that Herster had filed a complaint about the illegal course fees, and the following week, Parker informed Herster that there would be "a reappointment review and a faculty vote on her position on March 21, 2012." (Doc. 1, ¶ 37). In preparation for the faculty vote, Parker allegedly assembled materials and "intentionally omitted a variety of positive material . . . and included negative documents that had never been part of Herster's personnel file." (Doc. 1, ¶ 40).

4

Although Parker recused himself from the March 21 meeting, the faculty voted against her reappointment. On April 3, 2012, Carpenter informed Herster of the decision and gave her a memorandum prepared by defendant Arp listing the reasons as to why she was not reappointed. Herster asserts that the reasons in the memorandum were false and she decided to appeal the decision. In preparation for the appeal, she asked to see her personnel file in the LSU Human Resources Management office and learned that Normand had removed documents from her personnel file after she filed her complaint concerning the course fees. Additionally, Herster asked for the notes and/or minutes from the March 21 meeting. Carpenter allegedly agreed to provide her the notes/minutes and informed her that Arp had custody of the notes/minutes. Monaco allegedly told Arp not to give Herster the notes/minutes and instructed Arp to destroy them, which Arp did.

On May 2, 2012, Herster appealed the decision to Carpenter. According to Herster, LSU's policy requires that if a faculty member appeals a decision concerning re-appointment, the Dean of the College is responsible for deciding the appeal. However, Carpenter informed Herster that he had sent her appeal to Human Resources Management and defendants Monaco, Normand, and Ruebsamen would "handle the review." (Doc. 1, ¶ 46). On May 16, 2012, Carpenter told Herster that he "intended to instruct defendant Arp to reconvene the faculty to review a 'revised packet of material.'" (Doc. 1, ¶ 47). LSU's policy allegedly provides that after the Dean makes a determination, the faculty member has five business days to either accept or reject the Dean's decision, and if the faculty member rejects it, he or she may appeal to the LSU Provost.

On May 17, 2012, Herster learned that Carpenter had called a faculty meeting the following day and she e-mailed him to inform him that this was in contravention to her right to

5

have five business days in which she could either accept or reject his determination. However, on May 18, 2012, the School of Art faculty met and voted against her reappointment. After the meeting, Arp prepared another memorandum explaining why Herster was not reappointed. In the memorandum, Arp asserted that Herster had "withdrawn from specific photograph course instruction at the last minute," which Herster alleges is in reference to her approved leave in August of 2011 pursuant to the FMLA. (Doc. 1, ¶ 51).

Although Herster was not reappointed, she remained a member of the faculty until May of 2013, when the non-reappointment took effect. After the May 18th decision, Herster met with some of the students in the Digital Art area and alerted them to the misappropriation of the course fees. Herster agreed to help the students raise awareness about the issues by creating a video, which began filming in the last week of July 2012. Parker allegedly learned about the filming and soon after, LSU terminated Herster's access to her e-mail account. Herster also received a letter from Monaco informing her that she was no longer permitted to teach, she no longer had an office space, and she was "effectively banned from the LSU Campus." (Doc. 1, ¶ 55). Herster further alleges that the defendants have "repeatedly defamed her by calling her 'crazy' and other derogatory terms." (Doc. 1, ¶ 57). Herster asserts that the defendants have made these comments to students and other individuals "both within the School of Art and outside of it." (Doc. 22, ¶ 2).

In September 2012, Herster filed a second and supplemental EEOC charge, explaining the retaliation she experienced from filing the original EEOC charge. On January 7, 2013, Herster received a Right to Sue Letter and on January 22, 2013, Herster filed this action in state court, which was subsequently removed to this Court by the defendants. Herster has asserted both federal and state law claims against the defendants. The federal law claims include (1)

unlawful sex-based discrimination and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964; (2) unlawful retaliation for filing a complaint regarding sex discrimination; (3) unlawful retaliation for exercising rights under FMLA; (4) violation of the Equal Pay Act of 1963; and (5) violations of 42 U.S.C. § 1983 based on retaliation for exercising First Amendment rights, denial of due process, defamation, and conspiracy to violate rights under federal and state law. The state law claims include (1) violation of the Louisiana Whistleblower Act, LA R.S. 23:967; (2) violation of the Louisiana Employment Discrimination Law, LA R.S. 23:30 et seq.; (3) defamation; (4) spoliation; (5) intentional infliction of emotional distress. Additionally, Sullivan has filed a loss of consortium claim. Defendants have filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

II.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the complaint, the court must accept all well-pleaded facts in the complaint as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Loss of Consortium*

Defendants argue that the only claim that Sullivan has asserted is loss of consortium but he has failed to allege any facts to support such a claim. In opposition, plaintiffs argue that the complaint sufficiently alleges facts to show that the defendants have committed torts against Herster and that Herster has suffered damages, including mental and emotional distress, and loss of income. Because Sullivan is Herster's husband, plaintiffs assert that there are sufficient facts

7

to show that he has a claim for loss of consortium. However, after filing the opposition, plaintiffs were granted leave to amend and amended the complaint to include a fuller description of the damages that Sullivan seeks.

Louisiana law permits loss of consortium damages for the spouse of a tort victim. *O'Bear v. Global Industrial Contractors, LLC*, 2012 WL 1802432 (M.D. La. 2012). Here, the plaintiffs have alleged sufficient facts to support a claim for loss of consortium.

<em>Title VII</em>

Defendants argue that Herster has failed to state a claim under Title VII. Defendants argue that her Title VII and Equal Pay Act claims are time-barred, in part and that her Title VII allegations exceed the scope of the charge.[23]

It is well-established that under Title VII, a plaintiff must exhaust his or her administrative remedies prior to filing suit. *Taylor v. Books A Million, Inc.* 296, F.3d 376, 378-79. (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* at 379. "Filing a timely charge is a prerequisite to having an actionable claim." *Stewart v. Mississippi Transportation Comm'n,* 586 A plaintiff must file a charge with the EEOC no later than 180 days after the alleged discriminatory conduct occurred. 42 U.S.C.A. § 2000e-5(e)(1). In Louisiana, the filing period is extended to 300 days "if there is also a discrimination claim based on state law." *Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 888 (W.D. La. 2003). Defendants assert that, according to the complaint, Herster filed her EEOC Charge of Discrimination in December of 2011. Although

---

[2] Defendants also argue that Title VII does not provide a cause of action against employees, only employers, and thus, any claims asserted against the individual defendants under Title VII cannot stand. However, in the opposition, plaintiffs acknowledged this and clarified that the Title VII claims apply to LSU, and not the individual defendants. Thus, the Court will not address this argument.

[3] Defendants also assert that Herster failed to exhaust her administrative remedies because she did not include a charge of retaliation in her initial EEOC charge. However, as the plaintiffs point out, the complaint was amended to show that Herster filed a second, supplemental EEOC charge in September of 2012, which includes retaliation. Thus, the Court will not address this argument.

Herster did not indicate on what date she filed the December 2011 EEOC Charge, Defendants argue that, assuming she filed it on December 1, 2011, any acts of discrimination prior to February 4, 2011 are time-barred.

While the defendants are correct that a plaintiff must file an EEOC charge within 300 days of the alleged discriminatory act(s), Herster has also pleaded a claim for a hostile work environment and therefore, may rely on a "continuing violation" theory. As the Supreme Court explained, a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotations and citation omitted). Therefore, alleged actions that occurred outside the 300 day time frame may be considered, "'so long as any act contributing to that hostile environment takes place within that statutory time period.'" *Stewart*, 586 F.3d at 328 (quoting *Morgan*, 536 at 105).

However, there are three limitations on the "continuing violation" doctrine.

> First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts. Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.

*Stewart*, 586 F.3d at 328 (quotation and citation omitted). The Fifth Circuit has articulated three inquiries to determine whether the separate acts are related to constitute a continuing violation: (1) whether the acts involve similar types of discrimination; (2) whether the acts are recurring or isolated; and (3) whether the act has a "degree of permanence which should trigger an

9

employee's awareness of and duty to assert his or her rights[.]" *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (quotation and citation omitted). The Court finds that Herster has alleged sufficient facts to satisfy these three inquiries.

First, Herster alleged that throughout her employment, Parker subjected her to continuous sex-based discrimination, with similar acts occurring both within and outside the limitations period. For instance, Herster alleged that Parker excluded her from attending faculty meetings in 2009, which is outside the limitations period. (Doc. 1, ¶ 14). However, Parker also excluded her from decision-making meetings in 2011, which is within the limitations period. (*Id.*). Second, the complaint is replete with examples of recurring instances. Finally, "the pattern of harassment was not the kind of violation that – like a discrete instance of discriminatory conduct – would put a worker on notice that his rights had been violated." *Huckabay*, 142 F.3d at 239. Thus, the first prong, or inquiry, for the continuing violation theory is met.

Additionally, the Court finds that Herster has alleged sufficient facts to satisfy the second inquiry, whether the violation is continuous, because, as previously stated, the complaint is replete with factual allegations of continuous discrimination and harassment. Finally, by allowing Herster to rely on the continuing violation theory, the Court is able to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement." *Stewart*, 586 F.3d at 328. Thus, Herster's Title VII claims are not time-barred and she may pursue them under a continuing violation theory.[4]

---

[4] Defendants argue that Herster's Equal Pay Act claims are time-barred as well but do not provide any argument in support. This general claim is included in the defendants' argument that the Title VII claims are time-barred, but as plaintiffs point out, the Equal Pay Act is its own statute. However, Herster does claim that her rights were violated under Title VII by LSU because LSU allegedly discriminated against her by paying her a lower wage than her male counterparts. This claim is encompassed by the Lilly Ledbetter Fair Pay Act of 2009, which amended Title VII to provide a cause of action for discriminatory compensation "each time wages, benefits, or other compensation is paid[.]"42 U.S.C. § 2000e–5(e)(3)(A). As the United States Court of Appeals for the Seventh Circuit explained, the Ledbetter Act "concerns the question of *timing* – it affects *when* discriminatory practices may be challenged by extending the statute of limitations every time a paycheck is issued." *McReynolds v. Merrill Lynch & Co., Inc.*, 694

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 10 of 27

Finally, Defendants argue that Herster's Title VII allegations exceed the scope of the EEOC charge. Defendants assert that Herster's EEOC charge alleged sex-based discrimination and harassment by Parker, but in Herster's complaint, she includes "vague allegations of 'hostile treatment by members of the photography department at the School of Art," and "funny business in the darkroom" without naming such individuals. (Doc. 14, at 11). However, because neither party has attached a copy of the EEOC charge, nor was it attached to the complaint, the Court is unable to make a determination on this issue.

## Louisiana Employment Discrimination Law

Defendants argue that Herster has failed to state a claim under the Louisiana Employment Discrimination Law ("LEDL") because (1) LEDL only applies to employers, not individual defendants and (2) LEDL does not provide a claim for retaliation. Plaintiffs acknowledge that LEDL does not provide a cause of action against the individual defendants, and the LEDL claims are directed at Herster's employer, LSU. Plaintiffs also acknowledge that LEDL does not provide a claim for retaliation and have not asserted such a claim in the complaint. Thus, the Court need not address these arguments.

## Equal Pay Act

The Equal Pay Act ("EPA") is part of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The EPA makes it unlawful for employers to discriminate "on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]"29 U.S.C. § 206(d). The definition of "employer" in the EPA is defined in the FLSA. 29 C.F.R. § 1620.8. Under the FLSA, an

---

F.3d 873, 888 (7th Cir. 2012) (emphasis in original). Therefore, the Court finds that her Title VII wage discrimination claims are timely because Herster alleged she received discriminatory wages within the time limitations. (Doc. 1, ¶ 19).

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 11 of 27

"employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency[.]"29 U.S.C. § 203(d).

It is undisputed that LSU was Herster's employer. However, Defendants argue that Herster is unable to maintain an EPA claim against the individual defendants Carpenter, Parker, Monaco, Normand, and Ruebsamen.[5] To determine whether an individual is an employer for purposes of the FLSA and EPA, the Fifth Circuit utilizes the "economic reality test." *Martin v. Spring Break '83 Productions, LLC*, 688 F.3d 247, 251 (5th Cir. 2012). Under the test, "the court considers whether the alleged employer: (1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records." *Id.* (citation and quotation marks omitted).

Carpenter

Carpenter is the Dean of the College of Art + Design and Parker's supervisor. When Herster was hired, she negotiated her contract with Parker and the then Acting Dean, Mr. David Cronrath. (Doc. 1, ¶ 5). Although Carpenter did not hire or negotiate Herster's contract, the fact that his predecessor, Cronrath, was in a position to hire employees indicates that Carpenter possesses the same power. Defendants argue that the decision to promote Herster and the decision not to renew her appointment was not made by Carpenter, but by faculty vote, and thus, Carpenter does not have hiring and firing powers. However, as Herster points out, if a faculty member appeals a decision on appointment, LSU policy requires that the Dean of the College makes a decision. (Doc. 1, ¶ 46). Thus, this suggests that Carpenter does have hiring and firing powers.

---

[5] Defendants also argue that Herster cannot maintain an action against Arp, but Plaintiffs agree that Arp is not an employer under the definition, and thus, will not be considered.

Turning to the second inquiry, which is whether Carpenter supervised or controlled Herster's work schedule or condition of employment, Defendants argue that there are no facts to suggest that Carpenter possessed any of these powers. Herster asserts that Carpenter, as the Dean, had the "ultimate authority over duty assignments" and the Dean has to sign off on employment contracts, which set workloads and compensation. (Doc. 20, at 20).

With respect to the third prong, setting compensation and method of payment, Defendants argue that the decision to increase Herster's salary was made via a faculty vote, and not by Carpenter. However, as Herster points out, Carpenter worked with Parker to reduce her "percent effort," which resulted in "divesting Herster of access to University benefits, including health insurance benefits and state retirement contributions." (Doc. 1, ¶ 9). Herster argues that this demonstrates Carpenter's role in setting her compensation, which satisfies the third prong.

Finally, with respect to the fourth prong, Defendants argue that there are no facts to suggest that Carpenter would maintain employee records. Herster argues that Carpenter had control over her records, including the minutes of the faculty meeting and the memorandum of reasons explaining the decision not to reappoint her. The Court finds at this early stage of litigation, Herster has alleged sufficient facts to raise an inference that Carpenter was an employer under the FLSA, and by extension, the EPA.

Parker

Parker is the Director of the School of Art and was Herster's supervisor. The Court finds that, at this stage of litigation, the four prongs are satisfied. First, along with the Dean, Parker negotiated Herster's contract, which suggests that he has hiring powers. Although Herster has not alleged with particularity whether Parker has firing powers, the Court finds that Herster should be permitted to amend her complaint. Second, the complaint has sufficient allegations to

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 13 of 27

show that Parker supervised and controlled her schedule and conditions of employment, including naming her Area Coordinator, assigning her a "windowless closet as an office," and excluding her from meetings. Third, there are sufficient allegations to suggest that Parker had some control over her compensation because Herster attempted to discuss her salary with Parker and he indicated that "he set Herster's title and pay" because he believed she was a "trailing spouse." (Doc. 1, ¶ 10). Finally, Parker was partially responsible for compiling her records that were distributed to the faculty for the vote on her reappointment, which suggests that he maintained at least some of her records. Thus, the Court finds that at this early stage of litigation, there are sufficient facts to raise an inference that Parker was Herster's employer for EPA purposes.

Monaco, Normand, and Ruebsamen

Monaco, Norman, and Ruebsamen are employed with LSU's Human Resource Management department. Defendants argue that while they maintained Herster's records, satisfying the fourth prong, there are no facts to suggest that they had hiring/firing powers, authority to control the conditions of her employment, or determine her rate of pay. However, the Court finds that are sufficient allegations at this stage to support an inference that these individuals were employers. With respect to the first prong, while Herster has not alleged that they had hiring powers, these individuals have firing powers because when she appealed the non-reappointment decision to Carpenter, Carpenter told her that Monaco, Normand, and Ruebsamen would handle the review, which Herster asserts is indicative of their firing power. Thus, the Court finds that Herster should be permitted to amend her complaint to allege facts showing that these individuals had hiring powers.

With respect to the second prong, whether these individuals supervised or controlled Herster's schedule or conditions of employment, the Court finds that there are sufficient facts to support this. Herster argues that after she reported her concerns regarding the course fees, Normand informed her that the Human Resource Management office closed the investigation into her sex-based discrimination allegations. Additionally, after Parker learned that Herster and the students were filming a video about the course fees, LSU terminated her e-mail access and Monaco informed her that she would no longer be allowed to teach and that she was banned from campus. Because these defendants appeared to have the authority to control her access to campus and her ability to teach classes during the course of her employment, the Court finds that the second prong is satisfied.

With respect to the third prong, the Human Resources Management office appeared to have at least some control over Herster's compensation. Herster alleged that Parker threatened her not to speak with Human Resources about the disparities in her title, pay, and compensation, but Human Resources had requested a meeting with her on this issue. (Doc. 1, ¶ 13). This suggests that these individuals had some control over the compensation, satisfying the third prong. The fourth prong, maintenance of employee records, is undisputed and satisfied. Thus, the Court finds that at this early stage, there are sufficient allegations to withstand a motion to dismiss.

The Equal Pay Act Claim is Not Time Barred

Under the EPA, the statute of limitations is "two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). To show willfulness, a plaintiff must demonstrate that "the employer either knew or showed reckless disregard for the matter of

15

whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Defendants argue that Herster alleges that her statement was less than that of her male counterparts but she fails to allege facts to suggest that her employers acted with reckless disregard. Thus, Defendants contend that the applicable prescriptive period is two years, not three years, and any equal pay violation occurring prior to January 22, 2011 is time-barred. Defendants further argue that any claim based on her initial starting salary of $25,000 is prescribed because she received this salary from August 2009 to December 2010, when she was promoted and her salary was increased to $41,000.

Herster argues that the three year prescriptive period applies because she has alleged that the "actions by Parker and/or defendants . . . were intentional and/or malicious." (Doc. 1, ¶ 24). Herster asserts that pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). thus, Herster contends that the three year prescriptive period applies and the claims are not time barred.

The Court finds that at this early stage in the litigation, Herster's general allegations of the Defendants' state of mind suffice and the three year prescriptive period applies.

Equal Pay Act Claims

To establish a prima facie case under the EPA, Herster must show that (1) the employer is subject to the EPA; (2) Herster performed work "in a position requiring equal skill, effort, and responsibility under similar working conditions;" and (3) Herster was "paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir. 1993). It is undisputed that LSU, her employer, is subject to the EPA.

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 16 of 27

However, Defendants argue that Herster cannot establish a prima facie case by comparing her pay to that of Ostrenko, the male employee who was hired for the joint-tenure track position.

The Court disagrees and finds that Herster has made out a prima facie case. First, she and Ostrenko had "similarities in their assigned duties, work load, and work conditions," which satisfies the second prong of the three-pronged test. (Doc. 1, ¶ 19). Second, Herster was paid less than Ostrenko, with Ostrenko receiving $28,000 more than Herster for performing similar work. (*Id.*). Additionally, Herster has alleged that she was generally paid less than her male counterparts. (Doc. 1, ¶ 16). At this initial stage, this is sufficient to state a prima facie case.

Defendants' arguments to the contrary are without merit. Defendants argue that because Ostrenko was tenure-track and Herster was not, it is not appropriate to compare their salaries. However, the Fifth Circuit has explained that the "operative test is whether a woman is paid less for a job 'substantially equal' to a man's; the test relates to job content rather than to job title or description." *E.E.O.C. v. Hernando Bank, Inc*., 724 F.2d 1188, 1196 (5th Cir. 1984). Defendants also argue that Herster's allegation that when the faculty voted to increase her salary, she "received the maximum merit-based pay increase allowable by LSU policy," undercuts her EPA claim. (Doc. 1, ¶ 16). However, this does not change the fact that she was initially paid significantly less than Ostrenko, despite having different job titles, for doing similar work. Thus, the Court finds that Herster has made out a prima facie case.

### Section 1983 and Section 1985

Claims brought pursuant to Section 1983 may only be asserted against persons and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Defendants assert that Herster is unable to maintain claims against Parker, Carpenter, Monaco, Normand, Ruebsamen, and Arp,

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 17 of 27

acting in their official capacities.[6] However, Herster correctly argues that while these individual employees may not be sued for monetary damages under Section 1983, they may be sued for prospective relief. *See Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988) (explaining that *Ex parte Young* and the Eleventh Amendment "together create a relatively simple rule of state immunity. Basically, prospective injunctive or declaratory relief against a state is permitted-whatever its financial side-effects-but retrospective relief in the form of a money judgment in compensation for past wrongs-no matter how small-is barred."). In the context of employment, prospective relief includes reinstatement. *Nelson v. University of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008). Because Herster is seeking reinstatement and/or reasonable front pay, the Court finds that she may maintain her claims against the individual defendants in their official capacities.

Qualified Immunity

Defendants argue that the individual defendants are entitled to qualified immunity under the two-prong test established in *Saucier v. Katz*, 533 U.S. 194 (2001). Although the Supreme Court has receded from its two-prong test, finding that the lower courts "are in the best position to determine the order of decisionmaking that will be facilitate the fair and efficient disposition of each case," this Court will apply the test in the order established in *Saucier. Pearson v. Callahan*, 555 U.S. 223, 242 (2009). In *Saucier*, the Supreme Court found that the initial question is whether, taking the facts in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the conduct did not violate any constitutional right, that ends the inquiry. However, if the conduct did violate a constitutional right, the next step "is to ask whether the right was clearly established." *Id.* In

_____

[6] Defendants also argue that Herster cannot maintain a claim against LSU, but Herster acknowledges in her opposition that she is not bringing claims against the LSU Board of Supervisors under Sections 1983 and 1985.

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 18 of 27

other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Defendants argue that an official's conduct is protected by qualified immunity "unless the very action in question has been held unlawful." (Doc. 14, at 22). In fact, the very case that Defendants cite for this proposition states the opposite. "It had already been known since *Anderson* that the 'clearly established' standard does not mean that officials' conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004).

Defendants argue very generally that the plaintiffs are entitled to qualified immunity because their conduct did not violate "clearly established statutory or constitutional rights that a reasonable person would have known" and that plaintiffs have not shown any facts to support a finding otherwise. Defendants also argue generally that even if there were violations, there are no facts to show that the violations were contrary to established law..

Herster has stated several rights that were allegedly violated by the individual defendants, rights which the Court finds were clearly established at the time of the alleged violation. First, Herster has alleged that her First Amendment rights were violated when the defendants retaliated against her for speaking out concerning the course fees and filming the video.

> To prevail on a First Amendment employment retaliation claim, an employee must establish four elements: (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse employment action.

*Salge v. Edna Independent School District*, 411 F.3d 178, 184 (5th Cir. 2005). Thus, the right was clearly established that a state official cannot retaliate against an employee for exercising

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 19 of 27

their First Amendment rights to free speech. Here, Herster asserts that her speech was made as a citizen on a matter of public concern because she met with current and former students to film a video about the course fees. At this stage of the litigation, the Court finds that Herster has alleged sufficient facts to show that the defendants violated a clearly established right, and thus are not entitled to qualified immunity on her violation of her First Amendment right claim.

Next, Herster has alleged violation of due process in connection to the termination of her employment. "To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). A plaintiff must have "a legitimate claim of entitlement to the interest." *Driscoll v.* Stucker, 2004-0589 (La. 1/19/05); 893 So. 2d 32, 41. "Existing rules or understandings stemming from independent sources such as state law create and shape what property interests are subject to due process protection under the Fourteenth Amendment." *Id.* Herster asserts that LSU has written rules and policies concerning termination of a faculty position, which Herster argues gives her a "property right in having her position terminated only in accordance with those policies." (Doc. 20, at 31).

Herster contends that the complaint outlines multiple ways in which the defendants violated the established policies, including sending her appeal to Human Resources Management instead of the Dean, and reconvening a second faculty panel to reconsider the non-reappointment. Additionally, Herster argues that the defendants violated her right to due process by terminating her for her "whistle-blowing activities, which are protected by law." (Doc. 20, at 32). The Court is inclined to agree with Herster and the defendants are not entitled to qualified immunity for this claim.

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 20 of 27

Herster has also alleged that defendants have violated her right not to be discriminated against on the basis of her sex, and that this right was clearly established at the time of these violations. *See Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment."). The Court agrees and finds that the defendants are not entitled to qualified immunity for this claim.

Finally, Herster has alleged that the defendants violated both Section 1983 and Section 1985 based on conspiracy to violate these rights. Section 1985 provides, in part

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985. Herster argues that at all relevant times, the law was clearly established that state actors cannot conspire to violate another's civil rights. The Court agrees.

### *Retaliation under the FMLA*

To establish a prima facie case of retaliation under the FMLA, Herster must show that "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir. 2001). Defendants argue that Herster has failed to state a claim for retaliation under the FMLA because while Herster has alleged that she was protected under the FMAL and she suffered an adverse employment decision, she has not alleged that she was treated less favorably than an employee who did not request leave under the FMLA or that the adverse decision was made because she took leave

21

under the FMLA. Defendants assert that the only allegation that Herster made to support this claim is that after the faculty voted again not to reappoint Herster on May 18, 2012, defendant Arp prepared a report explaining the reasons why she was not reappointed. In the report, Arp explained that Herster had "withdrawn from specific photography course instruction at the last minute," which Herster alleged was in reference to her exercise of leave under the FMLA in August 2011. (Doc. 1, ¶ 51). In the alternative, Defendants argue that even if this Court finds that Herster has made a prima facie case, the individual defendants are entitled to qualified immunity because the reference in the report to her withdrawing from the course does not violate a constitutional or statutory right, or if it did, it is not contrary to clearly established law.

Herster argues that the non-reappointment memorandum explaining why she was not reappointed included her withdrawal from the photography class, which was her exercise of FMLA leave. Thus, Herster asserts that by including that decision in their basis for terminating her, this is an admission that their decision was based, at least in part, on the exercise of leave under the FMLA. Herster also asserts that the defendants are not entitled to qualified immunity because it was clearly established at the time that state actors can be liable for retaliation under the FMLA. *See Modica v. Taylor*, 465 F.3d 174, 188 (5th Cir. 2006). The Court is inclined to agree with Herster. At this stage of the litigation, Herster has alleged facts to raise a plausible inference that the decision to terminate her was based, at least in part, because of her withdrawing from teaching a class, a result of her taking leave under the FMLA. Additionally, the law was clearly established at the time of the incident, and thus, defendants are not entitled to qualified immunity.

*The Louisiana Whistleblower Statute*

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 22 of 27

Defendants argue that Herster has failed to state a claim for retaliation under the Louisiana Whistleblower Statute, La. R.S. 23:967 against the individual defendants because the statute does not provide a cause of action against individual employees, only employers. Herster agrees and the claim is only asserted against LSU. Thus, the Court need not address this argument.

*Intentional Infliction of Emotional Distress*

Under Louisiana law, a plaintiff may recover for intentional infliction of emotional distress ("IIED") by showing:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The conduct "must be so outrageous in character, as to go beyond all possible bounds of decency" and must be "regarded as atrocious and utterly intolerable in a civilized community." *Id.* "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not provide a basis for an IIED claim. *Id.* "The distress suffered by the employee must be more than a reasonable person could be expected to endure." *Nicholas v. Allstate Insurance Co.*, 1999-2522 (La. 8/31/00); 765 So. 2d 1017, 1027. Finally, "[l]iability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct." *White*, 585 So. 2d at 1210. "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.*

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 23 of 27

Defendants argue that Herster has failed to allege any facts to raise an inference that the Defendants' conduct was extreme and outrageous. Defendants assert that "ordinary employment disputes, even those involving discrimination and sexual harassment, will rise to the level of intentional infliction of emotional distress only in the most unusual of cases." *Booth v. Intertrans Corp.*, 1995 WL 324631, *17 (E.D. La. May 26, 1995). Defendants further assert that Herster has failed to prove that the Defendants intended to cause her severe emotional distress. However, Defendants do not appear to dispute the second prong of the IIED analysis, which is that the emotional distress suffered must be severe. Thus, the Court will not address the second prong, and will only focus on the first and third prongs.

Under Louisiana's jurisprudence, "[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *White*, 585 So.2d at 1210. The Louisiana Supreme Court has recognized that conduct "which, viewed as an isolated incident, would not be outrageous or would not be likely to cause serious damage, can become such when repeated over a period of time." *Bustamento v. Tucker*, 607 So. 2d 535, 538 (La. 1992).

The Court finds that the Defendants' alleged conduct was not extreme and outrageous. Accordingly, the Court will grant Defendants' motion to dismiss on this claim.

*Defamation*

Under Louisiana law, a plaintiff must establish four elements to prevail on a defamation claim: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello v. Hardy,* 2003-1146 (La. 1/21/04); 864 So.2d 129, 139 (quotations and

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 24 of 27

citation omitted). Defamation claims are delictual in nature and are subject to a one-year prescriptive period, which begins the day injury or damage is sustained. *Doughty v. Cummings*, 44, 812 (La. App. 2 Cir. 12/30/09); 28 So.3d 580, 584.

Defendants argue that Herster's defamation claims are prescribed, in part, because this matter was filed on January 22, 2013. Thus, any claim that is based on an alleged defamatory statement made prior to January 22, 2012 is prescribed. Although Herster does not appear to dispute this argument, the Court agrees with the Defendants and finds that any statement made prior to January 22, 2012 is prescribed.

Defendants further argue that the basis for Herster's defamation claim, which is that Parker and the other Defendants called her "crazy," is not actionable because it is an opinion. An opinion, which is based on "the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable[,] . . . [because] falsity is an indispensable element of any defamation claim . . . and a purely subjective statement can be neither true nor false." *Bussie v. Lowenthal*, 535 So. 2d 378, 381 (La. 1988) (internal citations omitted).

Herster argues that calling her "crazy" is not a statement of opinion, but it is defamatory per se. "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se." *Costello*, 864 So.2d at 140. Herster argues that calling a professor "crazy," by its very nature, tends to injure the professor's personal and professional reputation. Herster points to a Louisiana appellate court case in which the court found that statements that the plaintiff was a "cheat,"

Case 3:13-cv-00139-JJB-SCR   Document 24   06/03/13   Page 25 of 27

"trash," and "crazy" were defamatory per se. *Lamartiniere v. Daigrepont*, 168 So. 2d 370, 371 (La. Ct. App. 1964).

The Court is not persuaded that calling Herster "crazy" is defamatory per se. In a more recent opinion, the Fourth Circuit for the Louisiana Court of Appeals found that a radio host's statements that his guest was "an absolute fraud" and a "liar," were not defamatory per se because these statements were not the type that would, by their very nature, injure a person's personal or professional reputation. *Wood v. Del Giorno*, 2006-1612 (La. App. 4 Cir. 12/19/07); 974 So. 2d 95, 99. Additionally, the Court is not persuaded that calling Herster "crazy" is actionable because as Defendants argue, this is a statement of opinion. Thus, the Court will dismiss this claim.

III.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss with respect to the claims for intentional infliction of emotional distress and defamation, but DENIES the remainder of the Defendant's Motion. (Doc. 14).

Signed in Baton Rouge, Louisiana on June 3rd, 2013.

_____

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

Case 3:13-cv-00139-JJB-SCR   Document 24    06/03/13   Page 27 of 27