MARGARET HERSTER AND

SCOTT SULLIVAN

                                        CIVIL ACTION

VERSUS

                                        NO. 13-139-JJB

BOARD OF SUPERVISORS OF LOUISIANA

STATE UNIVERSITY, *ET AL.*

## **RULING ON MOTIONS FOR SUMMARY JUDGMENT, PARTIAL SUMMARY JUDGMENT, AND LEAVE TO FILE SUR-REPLY**

This matter is before the court on a motion for partial summary judgment filed by plaintiffs Margaret Herster (Herster) and Scott Sullivan (Sullivan) (Doc. 54) and motions for summary judgment filed by all defendants (Docs. 60, 61, and 62). Defendants Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College (LSU), Rod Parker (Parker), Ken Carpenter (Carpenter), A.G. Monaco (Monaco), Jennifer Normand (Normand), Mimi Ruebsamen (Ruebsamen), and Kimberly Arp (Arp) filed an opposition (Doc. 72) to plaintiffs' motion for partial summary judgment, and plaintiffs then filed a reply. (Doc. 75). Defendants Monaco, Normand, and Rubsamen, all LSU human resources employees (HRM Defendants), filed a motion for summary judgment (Doc. 60) as a group. LSU filed its own summary judgment motion (Doc. 61), and defendants Arp, Carpenter, and Parker (School of Art Defendants) filed their own motion for summary judgment (Doc. 62) as a group. Plaintiffs filed a combined opposition (Doc. 76), and each set of defendants filed a reply (Docs. 89, 90, and 91) addressing the arguments relevant to their cases. Plaintiffs then filed motion for leave to file a

sur-reply (Doc. 93), and all defendants filed an opposition (Doc. 94). Oral argument is not necessary.

<u>**Background**</u>

The following facts are not in dispute. Plaintiff Herster was an employee at LSU and held various positions in the School of Art until 2012, when the school did not renew her contract. The LSU Law Center hired Herster's husband, plaintiff Sullivan, when the main campus hired Herster; Sullivan remains a professor at the LSU Law Center.

While at LSU, Herster complained to several individuals about harassment. She alleged repeated sexual harassment and sex-based discrimination by officials in the School of Art, including Carpenter. In 2011, Herster began suffering physical and mental health issues. Eventually, she filed an EEOC charge asserting sex discrimination and sexual harassment. Around December 11, 2011, the EEOC delivered the notice of charge to LSU. The charge included information on LSU's legal obligations to maintain the appropriate records and materials relevant to the charge.

The sexual harassment and discrimination claims are numerous. Herster detailed many inappropriate comments by faculty within the School of Art, aimed both at her and female students. Parker, according to Herster, ignored her concerns that she received inferior compensation and benefits—for equivalent work—to her male colleagues. She further claims that Parker not just ignored her concerns but reacted by peppering her with more sexually discriminatory language. Particularly, Herster alleges that the School of Art passed over her for a tenure-track position to hire Derick Ostrenko (Ostrenko), a less-qualified[1] candidate. Additionally, Herster asserts that Ostrenko then obtained various benefits and perks that the

---

[1] The parties primarily dispute not whether Ostrenko was less qualified but instead whether Herster actually applied for the position. At issue is whether an e-mail about the position constituted a formal application.

School of Art denied to her multiple times in the past; she also claims that she was stripped of her position as "Area Coordinator" in favor of Ostrenko.

Herster's physical and mental symptoms eventually led her to take leave under the Family and Medical Leave Act (FMLA) around September 2011. The parties dispute whether Herster refused to teach any courses, but while she was on FMLA leave, the defendants admit that she did not receive timely pay. According to Herster, the motives were retaliatory, but the defendants maintain that it was merely a mistake due to the FMLA's complex nature. Ultimately, Herster was paid for the fall semester in November 2011.

During the timeframe of the alleged harassment, Herster learned of misappropriation of student fees by various individuals at the School of Art, including Parker. Herster complained, in writing, to several parties on LSU's campus on February 11, 2012. After investigation, Melissia Cedotal (Cedotal), LSU's internal auditor, found merit in Herster's allegations. Further, Cedotal recommended evaluating Parker's performance as director. According to Herster, Parker learned that she was behind the complaint and retaliated. At some point after the investigation and Herster's complaints, the School of Art convened an "evaluation for reappointment" meeting. Herster challenged this meeting, alleging that Parker should have recused himself as chair. At this meeting, the committee voted not to reappoint the plaintiff, and the School of Art decided, in view of the challenge to Parker, to hold a second meeting with Carpenter as chair. There, as in the first meeting, the committee members voted not to renew Herster's contract.

At the second meeting, Arp took personal notes. While Herster prepared for her appeal, she requested these notes from Arp; Arp sought advice from human resources about the request, and they recommended not providing the notes. Herster claimed that the notes were "public records" and told Arp he was obligated to turn over the notes. Arp never fulfilled this request,

however, because LSU's Human Resources Department interpreted LSU's internal rules, and state public records law, to only cover the memorandum Arp wrote after the meeting. Ultimately, Arp destroyed his notes—it was his practice to maintain them only until LSU made a final decision.

**<u>Standard of Review</u>**

A motion for summary judgment should be granted when the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, show that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The admissibility of evidence for summary judgment purposes conforms to the rules of admissibility at trial. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (citations omitted). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Whether a fact is material will depend on the substantive law. *Id*. When addressing a summary judgment motion, the court must make reasonable inferences in favor of the non-moving party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). If the movant meets his initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmovant to identify or produce evidence that establishes a genuine dispute of material fact. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

**<u>Analysis</u>**

I.      Immunity

The HRM Defendants and School of Art Defedants claim that they are immune from suit both in their official and individual capacities. (Doc. 60-1 at 9–10). Regarding their official capacities, the defendants argue that Eleventh Amendment sovereign immunity protects them. *Id*. at 9. As to their individual capacities, they argue qualified immunity based on facts specific to each defendant and set of defendants. *Id*. at 10–16.

A. Eleventh Amendment Sovereign Immunity

Because of the sovereign immunity guaranteed by the Eleventh Amendment, Section 1983 claims may only be asserted against persons and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). State employees and officials acting in their official capacities may not be sued for monetary damages under § 1983, but they may be sued for prospective relief. *See Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988); See also *Ex Parte Young*, 209 U.S. 123 (1908). Further, under *Ex Parte Young*, state officials cannot be sued for violations of state law in federal court. *Earles v. State Bd. of Certified Pub. Accountants of Louisiana*, 139 F.3d 1033, 1039 (5th Cir. 1998). Sovereign immunity can also be waived by consent, including through removal by a defendant. *Lapides v. Board of Regents*, 535 U.S. 613, 624 (2002).

Prospective relief, under the Eleventh Amendment, is limited to situations where the claimant has a protected interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Protected interests are those within the Fourteenth Amendment's language of "liberty" and "property." *Id*. at 569–70. "Property" includes interests from a variety of independent sources—not just the federal constitution—such as state law. *Paul v. Davis*, 424 U.S. 693, 709 (1976) (Internal citations omitted). In the employment context, reinstatement is a proper remedy for termination, but several courts have made a distinction in situations involving non-renewal of a contract. See, e.g., *Roth*, 408 U.S. at 579 ("respondent's 'property' interest in employment . . .

was created and defined by the terms of his appointment."). In that instance, due to the absence of a protected interest, reinstatement is only available if the contract is not renewed in retaliation for exercising First Amendment rights. (Doc. 62-1 at 7, 9–10).

Herster is seeking reinstatement, but both the HRM defendants and School of Art Defendants maintain that they are entitled to sovereign immunity. Further, Herster asserts a state law claim of spoliation against both the HRM and School of Art Defendants, and they claim sovereign immunity also protects them from this claim.

### i. Removal and Consent

In her opposition, Herster claims that the defendants waived the immunity based on voluntary removal to federal court. (Doc. 77 at 18–19). The case was removed, but neither group of defendants—including any of the individuals within either group—had been served by this time; LSU removed the case at a time when only it had been served. (See Docs. 1, 6–11); (Docs. 89 at 11, 90 at 13). Therefore, the other defendants did not waive sovereign immunity, and plaintiffs must overcome it through a different route.

### ii. Other arguments

#### a. HRM Defendants

The HRM defendants note that although Herster seeks reinstatement, they are unable to provide such relief. (Doc. 60-1 at 9–10). According to the HRM defendants, "[n]either Mimi Ruebsamen, nor Jennifer Normand, nor A.G. Monaco have any ability to reinstate a faculty member who has not been reappointed by her [c]ollege." *Id* at 9. To support their argument, the defendants offered three affidavits, one each from Ruebsamen, Normand, and Monaco, along with attached exhibits to each affidavit. (Docs. 60-3, 60-4, 60-5). Plaintiffs, opting to rest on the consent argument, presented no contrary evidence or facts. Therefore, the HRM Defendants are

protected by sovereign immunity from suit against them in their official capacity, and summary judgment on this claim should be granted.

The HRM Defendants also seek summary judgment on Herster's spoliation claim based on sovereign immunity. Again, Herster only offers the consent argument, while the defendants point out that sovereign immunity extends to state law claims brought in federal court. Because the consent argument fails, summary judgment in favor of the HRM Defendants should be granted on this issue.

b. School of Art Defendants

The School of Art Defendants argue that unlike the cases where reinstatement is available, Herster was not terminated; they merely declined to renew her contract. (Doc. 62-1 at 4). Expiration, unlike termination, does not deprive one of a protected interest because there is no such interest once the contract expires. *Id*. at 4–5. In *Roth*, the Supreme Court noted that a protected interest in employment is "defined by the terms of" the employment contract and ruled against a college professor in factually similar circumstances. 408 U.S. at 569. Similarly, in *Wells v. Doland*, the Fifth Circuit rejected reinstatement as a remedy for a professor whose contract was not renewed because the professor lacked an interest in continued employment. 711 F.2d 670, 677 (5th Cir. 1983). A final avenue, retaliation for asserting First Amendment rights[2], is not available according to the School of Art Defendants. (Doc. 62-1 at 8–9). The School of Art Defendants acknowledge that the Fifth Circuit allowed for reinstatement in a non-reappointment case, but the Fifth Circuit there focused heavily on the plaintiff's claims of retaliation for exercising her First Amendment rights. *Warnock v. Pecos County, Tex*, 88 F. 3d 341 (5th Cir. 1996). In her complaint, Herster alleges retaliation for her exercise of her First Amendment

---

[2] There are several Supreme Court decisions allowing for this, and they, like the Fifth Circuit case, heavily emphasize the uniqueness of the First Amendment retaliation claim. E.g. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977).

rights, but the retaliation to which she refers includes only events after the refusal to renew her contract. (Doc. 1-2 at 52–55). Herster, as with the HRM defendants, stuck to the consent argument and did not address these issues. The jurisprudence is clear, the School of Art Defendants have alleged particular facts, and given the lack of a response from Herster, the Court finds summary judgment on this issue should be granted.

Like the HRM Defendants, the School of Art Defendants seek summary judgment on Herster's spoliation claim based on sovereign immunity. Again, Herster only offers the consent argument, while the defendants point out that sovereign immunity extends to state law claims brought in federal court. Because the consent argument fails, summary judgment in favor of the School of Art Defendants should be granted on this issue.

B. Qualified Immunity

Qualified immunity protects government officials—from suit under 42 U.S.C. §1983 and related statues, including §1985—performing "discretionary duties" when their actions are reasonable regarding the rights that the official allegedly violated. *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). Essentially, it is a defense available to "all but the plainly incompetent or those who knowingly violate the law." *Id.* (Internal Citations Omitted). The Fifth Circuit uses a two-part test to evaluate qualified immunity defenses: first, whether the defendant's alleged action constitutes a violation of the plaintiff's constitutional rights, and second, "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).

     i.     HRM Defendants

     a.  Mimi Ruebsamen

Without addressing whether Herster's constitutional rights were violated, Ms. Ruebsamen jumps directly into the second part of the test: she alleges that all of her actions were in accordance with her job description and thus, not objectively unreasonable. (Doc. 60-1 at 11–12). Herster does not respond directly to this argument, but she does assert that convening a faculty review committee on Herster violated LSU's policy on faculty reviews of Professionals in Residence. (Doc. 77 at 28). However, Herster misreads this policy. The policy provision *requires* a review by the sixth year, but it does not prevent earlier reviews. (Doc. 90-2 at 24–25). Herster offered no other instances of "objectively unreasonable" actions, and therefore, the Court finds that summary judgment on this issue should be granted in favor of Mimi Ruebsamen.

### b. Jennifer Normand

Normand, like Ruebsamen, focuses on the reasonableness of her actions rather than Herster's constitutional rights. According to Normand, she followed the guidelines for her position and merely performed her job duties. (Doc. 60-1 at 13–15). For example, regarding the length of the investigation, Normand asserts that the number of complaints by Herster, as well the complexity of these complaints, means that Normand did not act in an "objectively unreasonable" manner in conducting the investigation. *Id.* at 14. Herster gives short shrift to Normand's arguments outside of the misinterpretation of LSU's policy on renewal meetings. Based on Normand's evidence and Herster's lack thereof regarding the reasonableness of Normand's actions,[3] the Court finds that Normand is entitled to qualified immunity and that summary judgment should be granted on this issue.

### c. A.G. Monaco

---

[3] Indeed, most of Normand's arguments refer to allegations in the complaint, not Herster's opposition memorandum. It is important to note here that the Court is ruling on Herster's failure to submit evidence that the actions were objectively unreasonable, *not* on Herster's submission of evidence that these allegations are factually correct.

Monaco supervised Ruebsamen and Normand, and his first argument is that because their actions were not objectively unreasonable, his supervision of their actions was not objectively unreasonable. (Doc. 60-1 at 15). Regarding banning Herster from campus and locking her out of her e-mail account, Monaco notes that his position requires him to protect the rights of LSU's employees; multiple employees complained to Monaco that Herster was threatening them, prompting Monaco to take this action. *Id*. As with Ruebsamen and Normand, Herster offers no evidence that these acts—even if they constituted a violation of her constitutional rights—were objectively unreasonable. LSU's policy on renewals is addressed above, and Herster offers no other reason that Monaco's actions are "objectively unreasonable." Summary judgment on this issue should be granted in favor of Mr. Monaco.

### ii. School of Art Defendants

As a group, the School of Art Defendants assert that they were not acting in an "objectively unreasonable" manner because they followed the instructions and advice of the Human Resources Department, including that of several of the HRM Defendants. (Doc. 62-1 at 15–16). Herster makes several factual allegations, but she offers no reason as to why the School of Art Defendants' actions would be "objectively unreasonable." The Court finds that Herster has failed to meet her burden to establish a genuine dispute of material fact regarding whether the School of Art Defendants are entitled to qualified immunity.

### II. Spoliation Claim

Both sides filed motions for summary judgment on the spoliation claim. Therefore, the Court will address whether summary judgment is appropriate for either the defendants or Herster.

### A. Individual Defendants

The spoliation claim regarding the individual defendants was addressed in the section[4] on sovereign immunity.

## B. LSU

### i. Duty to Preserve

Spoliation of evidence is the intentional destruction of evidence to avoid providing it to an opposing party. *Cavier v. Our Lady of the Lake Hospital, Inc.*, 2012-0560, p. 5 (La. App. 1 Cir. 2012); 112 So.3d 881, 886. For spoliation, the destruction must be intentional. *Id*. Whether the party had an obligation to preserve the evidence is central to the spoliation analysis. *Id*. Evidence must be preserved when "the need for the evidence in the future" is foreseeable. *Id*.

Plaintiffs and defendants agree that Arp intentionally put his notes through the shredder; they dispute whether he had an obligation to preserve those notes. (Doc. 72 at 6–13). Plaintiffs claim Arp had to preserve the notes for three reasons: first, defendants should have anticipated litigation; second, LSU's internal rules require it; and third, Louisiana's public records law requires it. (Doc. 54-8 at 13).

In response to the first argument, LSU asserts that it did not have control over Arp's notes because they were his personal notes. (Doc. 72 at 7). Forcing him to produce personal notes would, according to defendants, violate his right to privacy under the Louisiana constitution. *Id*. at 8. Regarding the second argument, defendants point out that LSU's internal rules exclude "personal papers of faculty . . . documenting their . . . professional activities" from the definition of public records. *Id*. As to the third argument, defendants refer to an opinion from the Louisiana Attorney General—about a public records issue—that indicates "'there is no requirement that a supervisor allow an employee to see files that the supervisor keeps for his own

personal reference, assuming the files are not required to be kept by the position he holds and are not used in the employee's permanent record.'" *Id*. at 8–9.

There is a genuine dispute of material fact as to whether the defendants had an obligation to preserve Arp's notes. LSU's defenses hinge on factual determinations about which there is a genuine dispute. Although Herster interpreted LSU's policy to require preservation of the notes, the Human Resources Department felt differently, and Arp's testimony indicates he destroyed similar notes before without incident. Therefore, neither side has established the absence of a genuine dispute of material fact.

ii. Bad Faith

As a genuine dispute of material fact exists concerning LSU and Mr. Arp's duty to preserve the notes, discussing Mr. Arp's bad faith in shredding the notes is unnecessary at this time. Summary judgment should be denied.

III. Equal Pay Act Claims

Herster makes several claims under the Equal Pay Act. These claims ensnare all named defendants, and the factual analysis differs for each group. However, the general rules of the Equal Pay Act apply to all three groups.

To establish a claim under the equal pay act, a plaintiff must show a "prima facie case of wage discrimination." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). This requires four elements: 1) the defendant is an employer that is subject to the Equal Pay Act; 2) the plaintiff worked "in a position requiring equal skill, effort, and responsibility under similar working conditions"; and 3) that the defendant paid the plaintiff "less than the employee of the opposite sex providing the basis for the comparison." *Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir. 1993). The burden then shifts to the defendant to show one of the four accepted

grounds for such a disparity: 1) "a seniority system"; 2) "a merit system"; 3) earning based on quantity or quality of work; or 4) factors other than sex. *Siler-Khodr v. University of Texas Health Science Center San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001). If the defendant establishes any of these grounds, the plaintiff then must show that the grounds offered is simply a pretext for sex discrimination. *Phillips v. TXU Corp.*, 195 F. Appx. 221, 224 (5th Cir. 2006).

A.  HRM Defendants

The HRM Defendants contend that they are not "employers" under the statute's definition. (Doc. 60-1 at 26). Several considerations are relevant to determine if a defendant is an "employer" for Equal Pay Act purposes, including whether the defendant "1) possessed the power to hire and fire employees, 2) supervised or controlled employee work schedules or conditions of employment, 3) determined the method or rate of payment, and 4) maintained employee records." *Martin v. Spring Break '83 Productions, LLC*, 688 F.3d 247, 251 (5th Cir. 2012). Specifically, the HRM Defendants argue that Ruebsamen's only hiring-related authority was to make sure LSU's policies were followed; she lacked any authority to fire or hire. (Doc. 60-1 at 27). She further lacked any authority related to the final three factors. *Id*. Normand similarly only has advisory authority: she can recommend firing an employee based on appropriate cause and has no authority related to the other three factors. *Id*. Finally, Monaco asserts essentially the same arguments: he lacks independent authority regarding all four factors. *Id*. at 28. Herster responds to none of these arguments directly, opting only to emphasize that the HRM Defendants "were aware" of the allegations in January 2011. (Doc. 77 at 30). Even if this is true, it does not establish that HRM Defendants are employers under the statute. Therefore, summary judgment in favor of the HRM Defendants on this issue should be granted.

B.  School of Art Defendants

The School of Art Defendants raise two arguments against Herster's Equal Pay Act claims: timeliness and that sex was not the basis for any pay disparity. (Doc. 62-1 at 24–26).

i.  Time to Bring Claim

Equal Pay Actions must be commenced within two years of accrual of the cause of action unless the violation is willful; then the time limit extends to three years. 29 U.S.C. §255(a). A willful violation includes one due to the "reckless disregard" of the employer. *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 (5th Cir. 1988). The School of Art Defendants claim that during the period before January 11, 2011, Herster was an instructor and actually received higher pay than the average instructor, including Ostrenko. (Doc. 62-1 at 25–26). Instructors received $4,000 per class, but Herster made $25,000 for teaching two classes per semester, or $6,250 per class over the course of an academic year. *Id*. at 26. Because there was no actual disparity before this period, then, there could not have been a "willful violation." *Id*. Herster responds by referring to several e-mails about her compensation between various School of Art Defendants, alleging that they refused "to pay her commensurate with this work." (Doc. 77 at 32). However, these e-mails do not demonstrate a reckless disregard or intentional refusal to pay Herster appropriately; indeed they show efforts from the School of Art Defendants to obtain better compensation[5] for Herster with budget cuts looming. (Doc. 76-5 at 15–24). Therefore, there is no genuine dispute of material fact regarding whether the claims under the Equal Pay Act prior to January 22, 2011[6] are time barred.

ii.  Sex as a Basis for Unequal Pay

The School of Art Defendants offer three reasons other than sex as the basis for the pay disparity. First, they argue that the plaintiffs cannot show that Herster, as a Professional in

---

[5] Parker's e-mails indicate exhaustion and are perhaps unprofessional, but they indicate no intentional disregard for the Equal Pay Act; merely a spirited disagreement.
[6] This is two years before Herster filed suit initially in state court.

Residence, had the same duties and responsibilities as Ostrenko, an Assistant Professor. (Doc. 62-1 at 27). Second, according to the School of Art Defendants, the salary for the position was determined at the time that LSU decided to advertise it; that is, before anyone knew the sex of the ultimate hire. *Id*. Third, the School of Art Defendants claim that Herster's salary of $41,000 was the maximum raise she could receive without approval by the system president after submission of written reasons. *Id*. Herster responds that she complained multiple times about her compensation—even referring to sex as a possible basis for the disparity—and received no satisfactory answers from the School of Art. (Doc. 77 at 32). Herster asserts that the School of Art Defendants repeatedly refused to pay her adequately for her contributions, and that this was based on her sex. *Id*. However, Herster fails to address any of the three arguments made by the School of Art Defendants, and although the e-mails she cites indicate both that the School of Art Defendants recognized she was worth more than her salary and a less-than-amicable attitude toward her complaints, there are no indications that her sex is the reason. She fails to show any evidence that her sex is the cause of the animosity, and indeed, the School of Art Defendants appear to be scheming how they can increase her pay within their administrative parameters. Herster has failed to establish a genuine dispute of material fact, and consequently, summary judgment should be granted on this issue in favor of the School of Art Defendants.

C. LSU

The LSU board of supervisors makes the same arguments as the School of Art Defendants—nearly verbatim—and those are discussed above. For the same reasons that summary judgment should be granted in favor of the School of Art Defendants, it should be granted in favor of LSU.

IV.    Title VII Claims

Herster's case includes claims that LSU violated Title VII in numerous ways, including sex discrimination, disparate pay, and hostile work environment. The parties, through their summary judgment motions, have raised several issues relating to these claims.

A. Time-barred claims

Louisiana is a "deferral state" because The Louisiana Commission on Human Rights can handle employment discrimination claims. La Rev. Stat. Ann. §51:2231, et seq. In deferral states, plaintiffs have three hundred days from the alleged discriminatory act to file a charge with the Equal Employment Opportunity Commission (EEOC). If the charge rests on a "pattern of conduct," however, the charge only needs to be filed within three hundred days of one of the acts constituting the pattern. *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 (2002). LSU asserts that because Herster filed her EEOC charge in December of 2011, the earliest actionable conduct would be February 4, 2011, or three hundred days before December 1, 2011. However, Herster's complaint refers to numerous actions before February 4, including several in 2010 or 2009; LSU argues that these are time-barred. (Doc. 61-1 at 2–3). Herster argues that her claims involve a "pattern of conduct," making the earlier events covered as several other acts did occur within the three hundred day period. (Doc. 77 at 34). Herster is correct, as several of her claims, including the hostile work environment claim, involve patterns of conduct, including events in 2009 and 2010 that grew into further alleged harassment in 2011. Summary judgment in favor of LSU barring claims based on acts before February 4, 2011 is inappropriate.

B. Scope of the EEOC Charge

LSU makes two arguments regarding the scope of the EEOC charge. First, it contests that events before September 1, 2011 and after November 30, 2011, are outside the charge's scope

because of the language that Herster used in her factual statement. Second, LSU argues that Herster's September 28, 2012 letter to an EEOC employee does not satisfy the requirements of EEOC charge, making the allegations therein outside of the scope of the original EEOC charge and thus, not actionable.

i. Scope of Initial Charge

A suit under Title VII is limited to "the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAP Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). When evaluating the scope of the charge, courts "consider such factors as the alleged basis for the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). The scope of an EEOC charge is construed liberally to protect lay persons who are not well-versed in employment discrimination law. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).

LSU argues that Herster only refers to sex discrimination and retaliation[7] between September 1, 2011 and October 1, 2011 in her factual statement; their emphasis is on the "dates of discriminatory acts specified" factor. (Doc. 61-1 at 4). They also seek a more narrow construction of Herster's charge because her husband is a professor of law, reducing the policy justification for a broad interpretation. (Doc. 91 at 14). Herster focuses on the principal of liberally construing the EEOC charge and argues that various events before and after the dates specified in the complaint "could reasonably grow out of" her EEOC charge. (Doc. 77 at 32–33). Although Herster's husband is a lawyer and a professor of law, his specialty is not employment law, and indeed, the defendants offer no evidence that he had any special expertise or experience

_____

[7] Her factual statement refers to harassment up to November 30, 2011, so that claim extends beyond October 1.

in employment law. Therefore, LSU's argument that Herster should be denied the liberal construction fails. Given the wording of Herster's claim, which states that she was denied promotion in favor if a man and alleges that complaints to the Human Resources Department produced no results, it is reasonably foreseeable that the investigation would explore events prior to the promotion; this would be necessary to evaluate the validity of her claim regarding the basis for LSU's choice in promoting Ostrenko over her. Summary judgment on this issue should be denied.

ii. Amended Charge

An EEOC charge must be "in writing under oath or affirmation." 42 U.S.C. §2000e-5. This requirement shields "employers from the disruption and expense of responding to a claim unless a complainant is serious enough . . . to support it by oath subject to liability for perjury." *Edelman v. Lynchburg College*, 535 U.S. 106, 113 (2002). LSU claims that because Herster's "supplemental EEOC charge" was a letter to an EEOC employee that was not verified, it cannot be considered an EEOC charge. (Doc. 61-1 at 5). Therefore, the allegations within it should not be actionable because Herster failed to exhaust her administrative remedies concerning these claims; LSU also points out that they did not get notice of this letter until the discovery stage of this lawsuit. *Id*. at 5–6. Herster sticks with the liberal construction argument. (Doc. 77 at 32–33). Though her charge only covers events before it was filed, it is reasonable to expect that similar events occurring after the charge would be subject to potential litigation, including the non-renewal of her contract—the alleged retaliatory action. Therefore, summary judgment seeking dismissal of claims based on events after Herster filed her initial charge should be denied.

C. Sex Discrimination

Title VII sex discrimination claims are analyzed under the burden-shifting analysis: the plaintiff must make out a prima facie case for discrimination, followed by the defendant's legitimate, non-discriminatory reason, and then the plaintiff must show that this is a pretext for discrimination. *McDonnell Douglas, Corp. v. Green*, 411 U.S. 792 802–04 (1973). A prima facie case requires that the plaintiff show membership in a protected class, denial of a benefit, and that an employee not in that protected class received the benefit.

Herster's sex discrimination claim, or at least the one LSU addresses in its memorandum in support of summary judgment, is that LSU hired Ostrenko, a less qualified male candidate, for the tenure-track position. (Doc. 61-1 at 7). LSU argues that Herster cannot establish her claim because she did not apply for the position. *Id*. According to LSU, Herster's claims that she was unaware of the position do not hold up because the university advertised the position online and forty-nine applicants managed to find it. *Id*. at 7–8. Herster counters that she did apply for the position and points to an e-mail where she expresses interest in the opening. (Doc. 77 at 7, 37). This, however, does not constitute a formal application, and Herster should have followed the procedures followed by the forty-nine individuals who did apply. Summary judgment on the sex discrimination claim for losing the tenure-track position to Ostrenko should be granted.

### D. Harassment/Hostile Work Environment

Establishing a claim for harassment under Title VII requires showing five elements; Herster must show that "1) she is a member of a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her membership in a protected class; 4) the harassment affected a term, condition or privilege of her employment; and 5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Several factors are relevant to

determine if there is a hostile work environment: frequency of the conduct, severity of the conduct, whether the conduct is "physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Id*. LSU refers to its "scope of the charge" argument and attempts to exclude several events alleged during 2009 and 2010. (Doc. 61-1 at 9). Further, LSU argues that "trailing spouse" is either not derogatory—as it is a literal term for a spouse who gets hired after the first spouse—not based on sex—as Parker claims that he used it to refer to both husbands and wives—or both. *Id*. at 10. Herster cites numerous instances of purported inappropriate language, including that Parker indicated Herster should be more submissive, like his wife, and instances where Parker called Herster a "princess." (Doc. 61-1 at 9). Even if the Court accepted LSU's argument—which it does not—that "trailing spouse" was conclusively not a discriminatory term based on gender, these instances suffice to create a genuine dispute of material fact on the issue of harassment and hostile work environment. These may be interpreted as small or minor instances, but they are frequent; referring to a female employee as a "princess" and secondary to her husband are fairly severe; and finally, Herster presents evidence that this interfered with her work performance by severely affecting her mental health. Therefore, summary judgment on this issue should be denied.

### E. Disparate Pay

LSU argues that although Herster's charge references her starting salary, it makes no actual allegations of disparate pay. (Doc. 61-1 at 11). According to LSU, they never received EEOC requests regarding Herster's salary. *Id*. Herster responds that though she and Ostrenko had different titles, they performed sufficiently similar work to create a genuine dispute of material fact. (Doc. 77 at 35–37). LSU's argument does not survive the "liberal construction" of

EEOC charges; that Herster mentioned her salary should be sufficient to put LSU on notice that an EEOC investigation arising out of the charge might include her pay. Therefore, summary judgment on this issue should be denied.

V.      Louisiana Employment Discrimination Law

Louisiana's statutory scheme for employment discrimination is essentially identical, analytically, to Title VII. *Bustamento v. Tucker*, 607 So.2d 532, 538 n. 6 (La. 1992). Therefore, the results are identical to those for Herster's Title VII claims. First, the claims based on events prior to December of 2011 are actionable and within the scope of the charge. Second, the letter purporting to be an "amended EEOC charge" is not sufficient to satisfy the administrative requirements; this includes retaliation. Third, the harassment and disparate pay claims survive because there is a genuine dispute of material fact, as detailed in those sections on Title VII, while the sex discrimination claim based on hiring Ostrenko for the tenure-track position does not.

VI.     Retaliation

A.  Family and Medical Leave Act

Herster also claims that her non-reappointment occurred in retaliation for taking FMLA leave. (Doc. 60-1 at 29). She asserts these claims against all defendants, and as with the other claims, the factual analysis differs with each group. However, the basic legal principles of the FMLA are the same. To establish a claim for retaliation under the FMLA, the plaintiff must first make a prima facie case that: "1) she was protected under the FMLA; 2) she suffered an adverse employment decision; and either 3a) that she was treated less favorably than an employee who had not required leave under the FMLA; or 3b) the adverse decision was made because [s]he took leave." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). If the

plaintiff establishes her prima facie case, the defendant must show "a legitimate . . . nonretaliatory reason for the employment action." *Id*. Should the defendant do so, the plaintiff then "must show by a preponderance of the evidence that reason was a pretext for retaliation." *Id*.

### i. HRM Defendants

The HRM Defendants note that the alleged retaliatory action, the nonrenewal, occurred without their involvement. (Doc. 60-1 at 29). They did not participate in the meeting and did not vote on Herster's reappointment. *Id*. Herster contends that they refused to pay her initially after her FMLA request and that they are liable for their part in "suggesting" the renewal committee meeting. (Doc. 77 at 44–45). The HRM Defendants fail to cite any jurisprudence to support their position, and the Court finds they have failed to meet their burden to show that they are entitled to judgment as a matter of law. Therefore, summary judgment on this issue should be denied.

### ii. School of Art Defendants

The School of Art Defendants assert that Herster's FMLA leave request did not factor into the decision and was not discussed at the meeting. (Doc. 62-1 at 30). They refer to the committee's written report explaining the reasons for their recommendation; the FMLA is absent from this report. *Id*. Herster claims that these justifications are merely a pretext for retaliation, noting that the meeting convened "only a handful of months later" and that several of the School of Art Defendants expressed agitation toward Herster for using her FMLA leave. (Doc. 77 at 44–45). Given the evidence presented, there is no genuine dispute of material fact regarding the FMLA retaliation claim. Though Herster presents e-mails where the School of Art Defendants were clearly annoyed with her, there is no connection of this to her use of FMLA leave. Herster further cites no evidence showing that her FMLA request was discussed at the meeting. She

submits an affidavit from Sullivan, who claims that Ostrenko told him that the contents of the report on the meeting are false, but this still does not suffice to show that the FMLA leave was discussed. *Id*. at 15. Carpenter's report included a reference to Herster's refusal to teach a class, but this incident occurred in 2009, well before Herster took FMLA leave. (Doc. 90 at 25). Therefore, summary judgment in favor of the School of Art Defendants is appropriate.

### iii.  LSU

LSU, as with the Equal Pay Act, argues the same points as the School of Art Defendants. Herster's opposition, similarly, addresses all defendants' arguments together, and she offers no additional rebuke than that discussed in the subsection on the School of Art Defendants. This warrants an identical result: there is no genuine dispute of material fact, and summary judgment should be granted in favor of LSU on the FMLA retaliation claim.

### B.  Title VII

LSU, here, refers back to the "scope of the charge" argument regarding the letter that Herster claims is an amended EEOC charge. (Doc. 61-1 at 12). However, as a genuine dispute of material fact remains, that argument for summary judgment is unpersuasive. Title VII retaliation requires meeting a familiar three part test: first, the employee must have done some action protected by Title VII; second, the employee must have suffered an adverse employment action; and third, the employee must establish a causal connection between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Herster met the first two elements by filing an EEOC charge and through the non-renewal of her contract. (Doc. 61-1 at 12–13). LSU argues that because five months passed between the filing of the charge and the second, conclusive, faculty meeting on Herster's non-renewal, no casual relationship can be established; they compare their case to one out of Texas with similar facts, including a five

month gap. *Patel v. Texas Dept. of Transportation*, 462 F. App'x. 493 (5th Cir. 2012). Regardless of the outcome of that case, given that LSU's policy for addressing contracts such as these requires convening faculty meetings, which in turn require gathering a large amount of materials so that faculty can accurately evaluate the employee, the Court finds that this five month gap does not suffice to establish no genuine dispute of material fact.

LSU also argues that Arp's memorandum details the reasons for non-renewal, and none of these include Herster's actions related to Title VII. (Doc. 61-1 at 14). These reasons include that she refused to teach the number of classes expected and that she received poor teaching evaluations. *Id*. at 18. Herster points out that Arp admitted that Herster's EEOC charge came up at the faculty meeting, even if Arp claims that he "'redirected' the discussion" rather quickly. (Doc. 77 at 42). The Court agrees with Herster. Although Arp claims to have refocused discussion, that the charge was mentioned at all is sufficient basis for a genuine dispute of material fact. Once the charge is mentioned, the faculty members have it on their mind, and simply shifting the discussion to other, appropriate matters does not overcome this. Summary judgment on this issue should be denied.

C.  Louisiana Whistleblower Act

Louisiana's Whistleblower Act forbids retaliation when employee "in good faith, and after advising the employer of the violation . . ., [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law." La. Rev. Stat. Ann. 23:967(A) (West 2012). The Act has five elements: "1) a workplace act or practice violates state law, 2) the employee informed his employer of the violation of state law, 3) the employee disclosed or threatened to disclose the violation, 4) the employee suffered an adverse employment action, and 5) the

adverse employment action was suffered as a result of his whistleblowing activity." (Doc. 61-1 at 16).

LSU contends that there is no genuine dispute of material fact regarding the fifth factor—causation. *Id*. Herster points to similar evidence as she did with the FMLA. The Court determined that summary judgment in favor of LSU was appropriate on the FMLA retaliation claim because Herster offered insufficient evidence to establish causation. Unlike with the FMLA, here Herster presents sufficient evidence of a genuine dispute of material fact. LSU relies, again, on the report from the committee's meeting, and all of the report's reasons are supported by other evidence. Herster notes that many people lost money because of her exposé on the misuse of fees, and the video reflected particularly poorly on Rod Parker. (Doc. 77 at 11–12). Further, LSU Internal Auditor Melissa Cedotal recommended that Parker be removed as Director of the School of Art. *Id*. at 12. Parker actually presided over the first faculty committee meeting before the School of Art held a second meeting with Parker recused. *Id*. at 13–14. Finally, according to Arp—present at both meetings—Herster's complaints, like her Title VII charge, were discussed at both meetings. *Id*. at 14. Even though Arp indicated that he stressed those were not the reasons for the meeting and could not be discussed, that Herster's complaints about fees came up at all is sufficient to establish a genuine dispute of material fact. Summary judgment on this issue should be denied.

VII.    Motion for Leave to File Sur-Reply

Herster, after the defendants filed their reply, sought leave to file a sur-reply (Doc. 93). The defendants oppose this motion, noting that sur-replies are disfavored and that Herster failed to show any new arguments raised in their reply not already raised in their initial memoranda. Herster's memorandum in support focuses on the page number disparity, but as defendants point

out, she decided to file a combined reply. The Court also agrees that the defendants raised no new issues in their replies. Therefore, the Motion for Leave to File Sur-Reply should be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, the plaintiffs' motion for partial summary judgment (Doc. 54) is DENIED, the School of Art Defendants' motion for summary judgment is GRANTED (Doc. 62), the HRM Defendants' motion for summary judgment is DENIED with respect to retaliation under the FMLA and GRANTED (Doc. 60) in all other respects, and LSU's motion for summary judgment (Doc. 61) is GRANTED in part with respect to FMLA retaliation, the Equal Pay Act, and the Title VII sex discrimination claim regarding the hiring of Ostrenko for the tenure-track position and DENIED in part with respect to Title VII claims concerning harassment, disparate pay, and events being outside the scope of the charge, Louisiana employment discrimination claims, spoliation, and claims under the Louisiana Whistleblower Act. Plaintiff Herster's Motion for Leave to File Sur-Reply (Doc. 93) is DENIED.

Signed in Baton Rouge, Louisiana, on December 8, 2014.

_____

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**