UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARGARET HERSTER AND
SCOTT SULLIVAN

                                                            CIVIL ACTION

VERSUS

                                                            NO. 13-00139-JJB-EWD

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY, *ET AL.*

**ORDER WITH REASONS**

Earlier in this litigation, the Court issued a *Ruling* denying summary judgment on Plaintiffs' Family Medical Leave Act (FMLA) retaliation claims against A.G. Monaco, Jennifer Normand, and Mimi Ruebsamen, in their individual capacities (the Human Resource Management (HRM) Defendants), and denying summary judgment on Plaintiffs' spoliation claim.[1]   Subsequently, the Court issued a *Briefing Notice* ordering the parties to address three specific issues pertaining to Plaintiffs' FMLA retaliation claims[2] and spoliation claims.[3]   The parties, having been given the opportunity to file their respective *Supplemental Briefs*,[4] the Court has reconsidered, *sua sponte*, its prior *Ruling*

---

[1] Doc. 102.
[2] As to the Plaintiffs' FMLA retaliation claim, the Court ordered the parties to brief "[t]he specific factual background supporting the FMLA Retaliation claim against defendants Monaco, Normand, and Reubsamen.  Specifically, what actions did each defendant take to cause the decision not to renew Herster's appointment?"  Doc. 164.
[3] The Court ordered the parties to brief the following two issues pertaining to the Plaintiffs' spoliation claim: "(1) Whether LSU had a duty to preserve Kimberly Arp's notes for purposes of Plaintiffs' spoliation claim in view of the rationale of Judge Riedlinger's ruling (Doc. 92)"; and "(2) Causation and damages for Plaintiffs' spoliation claim.  You should specifically address the factual basis for Plaintiffs' damages, including whether an award of damages for spoliation is independent or somehow linked to the underlying retaliation claims."  Doc. 164.
[4] Doc. 166 and Doc. 170.

as to these specific claims.[5]   After careful consideration, the Court shall dismiss the Plaintiffs' FMLA retaliation claims against the HRM Defendants in their individual capacities, and the Plaintiffs' spoliation claim.

## I.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]   "An issue is material if its resolution could affect the outcome of the action."[7] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[8]   "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[9]   If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[10]   However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the

---

[5] Although the Court originally denied summary judgment on the Plaintiffs' FMLA retaliation and spoliation claims, the Court may reconsider its *Ruling* before or at trial *sua sponte.*  See, *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)(quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)("An order denying summary judgment is interlocutory, and leaves the trial court free to 'reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'")).

[6] Fed. R. Civ. P. 56(a).

[7] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)(quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).

[8] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).

[10] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[11]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[12]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[13]  However, "[t]he court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[14]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[15]

## II.    FMLA Retaliation Claims Against HRM Defendants

The Court agrees with the Defendants regarding the Plaintiffs' attempt to broaden the scope of their pleadings through argument in dispositive motions.[16]  Plaintiffs argued in their memorandum in opposition to Defendants' summary judgment motion that "the

---

[11] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[12] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[13] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[14] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[15] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[16] The Court notes that the HRM Defendants previously raised this argument in their *Reply Brief* in support of their *Motion for Summary Judgment*. Doc. 89, pp. 19-20 ("It appears that Plaintiffs are now attempting to assert a brand new claim against all defendants herein based upon the alleged violation of Ms. Herster's FMLA rights for failure to timely pay her FMLA benefits.  In doing so, Plaintiffs allege, '…the LSU HR defendants refused to pay her for most of the semester following her return to work.'  But this is not a cause of action asserted by Plaintiffs in their Complaints.  Rather, Plaintiffs have only asserted a claim for *retaliation* due to Ms. Herster's taking of FMLA leave.  Therefore, because this new allegation asserted long after the close of discovery was never a cause of action alleged herein, Plaintiffs cannot assert it now by means of an opposition memorandum." (emphasis original)).

3

LSU HR defendants refused to pay [Herster] for most of the semester following her return to work."[17]  However, after reviewing the Plaintiffs' *Original* and *Amended Complaints*, the Court finds that neither this allegation nor any other allegation was made that would have put the HRM Defendants on notice that any FMLA retaliation claim was being asserted against them.[18] The allegations related to Herster's FMLA retaliation claim are limited to the following:

> In August 2011, Herster was diagnosed with major depression and panic disorder as a consequence of Parker's actions.  Consistent with University policy, Herster provided LSU with her doctor's certification and requested intermittent leave pursuant to the Family Medical Leave Act ("FMLA").  On September 1, 2011, Herster was informed that her request for such leave had been approved.  Consistent with her doctor's orders, Herster immediately began treatment that included counseling and pharmaceutical treatment.[19]
>
> ****
>
> In this iteration [Arp's memorandum], ARP asserted that Petitioner Herster's [sic] had 'withdrawn from specific photography course instruction at the last minute.'  The only plausible reference to Petitioner Herster's exercise of leave protected by the FMLA in August 2011, which was certified and approved by the University.[20]

Neither of these allegations assert any individualized claims against the HRM Defendants, and to allow the Plaintiffs to expand the scope of their FMLA retaliation claim

---

[17] Doc. 77, pp. 44-45 ("Even though she was only on FMLA for a 2-week period, the defendants refused to return her to the same or substantially similar position instead removing her entirely from teaching and nearly all of her duties and retaliating against her for taking FMLA . . . In the Parker emails to and from HR regarding Ms. Herster's FMLA, Parker and HR cannot contain their disgust regarding the FMLA request.  In their various responses to Ms. Herster, the HR defendants provide little more than misinformation and flat out wrong information regarding Ms. Herster's FMLA rights.  Upon her attempts to return to her position following her FMLA, the defendants refused, even going so far as to stop paying her altogether.  Thereafter, the defendants invoked the 'faculty review' and ultimately terminated her, in part, for taking FMLA.").

[18] *Anderson v. US Dept. of Housing and Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008)( "Although [notice pleading] does not require pleading specific facts, the complaint must 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.  Where a complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." (internal quotations and citations omitted)).

[19] Doc. 1-2, ¶ 21.

[20] Doc. 1-2, ¶ 51.

beyond the allegations contained within the *Original* and *Amended Complaints* would run afoul of notice pleading requirements.[21]  Accordingly, the Court finds that Plaintiffs' FMLA retaliation claims against the HRM Defendants in their individual capacities shall be dismissed.

Moreover, even if the Court were to allow the Plaintiffs to expand the scope of their pleadings to assert a FMLA retaliation claim against the HRM Defendants, the Court agrees with the Defendants that the record evidence fails to support such a claim, and adopts their arguments herein.[22]

Accordingly, the Plaintiffs' FMLA retaliation claims asserted against A.G. Monaco, Jennifer Normand, and Mimi Ruebsamen, in their individual capacities, shall be dismissed with prejudice.

### III.    Plaintiffs' Spoliation Claim[23]

In an earlier *Ruling* in this case, the Magistrate Judge concluded that the imposition of a Rule 37 sanction of an adverse inference based upon Plaintiffs' spoliation claims against the Defendants for failing to preserve Tenured Faculty Professor Kimberly Arp's[24] notes taken during the faculty meetings concerning Herster's renewal was unwarranted.[25]

---

[21] *See*, *Matherne v. Cytec Corp.*, 2002 WL 506816, at *8 (E.D.La. Mar. 28, 2002)(arguments made in memorandum in opposition to summary judgment and not pled deemed to be improper expansion of the pleadings); *Beard v. Wolfe*, 2014 WL 3687236, at *2 (E.D.La. July 23, 2014)(pleadings cannot be expanded through an opposition memorandum).  *See also*, Wright & Miller, 5 Fed. Prac. & Proc. Civ. 2D § 1202 (2016)(Although the Federal Rules allow for a liberal pleading standard, they "do contemplate that the pleadings will refer to the occurrences sued upon and that they will show that the pleader has a claim on which he or she is entitled to relief" and give the defendant "fair notice of what is being asserted against him.").

[22] Doc. 166, pp. 12-13.

[23] Louisiana law applies to Plaintiffs' intentional spoliation claim.

[24] It is undisputed that Arp served as the Tenured Faculty Coordinator in the School of Art and served as the Chair of the Tenured Faculty Committee.  Doc. 62-4 and Doc. 62-13.  It is also undisputed that Arp destroyed his notes.

[25] As the Defendants correctly point out, it is somewhat unclear whether the Plaintiffs ever properly asserted a spoliation claim against LSU, as it appears from the *Original* and *Amended Complaints* such claims were only alleged against certain individual Defendants.  Doc. 166.

The Magistrate concluded that the evidence submitted by the parties failed to establish (1) a duty to preserve the notes, and (2) that they were purposefully withheld and destroyed in order to hide information that would be harmful to the Defendants.[26] Subsequently, this Court concluded that a genuine dispute of material fact existed as to whether the Defendants had an obligation to preserve Arp's notes.[27]  Due to the apparent inconsistencies between the two *Rulings*, the Court ordered the parties to brief whether "LSU had a duty to preserve Kimberly Arp's notes for purposes of Plaintiffs' spoliation claim in view of the rationale of [the Magistrate Judge's] ruling."[28]

"[S]poliation of evidence refers to the intentional destruction of the evidence for the purpose of depriving the opposing party of its use at trial."[29]  Louisiana law provides two remedies for spoliation:   exclusion of the spoiled evidence or allowing an adverse inference.[30]  Before either remedy may be imposed, however, "[t]he party having control over the evidence must have had an obligation to preserve it at the time it was destroyed."[31]  Such a duty "arises when the party has notice that the evidence is relevant to the litigation."[32]  If the court finds that a party had an obligation to preserve the evidence, then the court must determine whether the party intentionally destroyed the evidence and their likely contents.[33]  Because Louisiana law does not recognize a claim for negligent

---

[26] Doc. 92.

[27] The parties filed cross-motions on summary judgment on Plaintiffs' spoliation claims.  The Court granted the Defendants' motion as to the individual Defendants finding they were entitled to sovereign and qualified immunity.  As for Plaintiffs' remaining claims against LSU, the Court denied Plaintiffs' summary judgment motion, holding that "a genuine dispute of material fact as to whether the defendants had an obligation to preserve Arp's notes" existed.  Doc. 102, p. 12.

[28] The Court also directed the parties to brief the issues of causation and damages as they pertained to Plaintiffs' spoliation claim.

[29] *Tomlinson v. Landmark American Ins. Co.*, 2015-0276 (La.App. 4 Cir. 3/23/16), 192 So.3d 153, 160.

[30] *Everhardt v. La. Dept. of Transp. And Dev.*, 2007-0981 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1044.

[31] *Id.* (quoting *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998)).

[32] *Id.*

[33] *Id.*

spoliation,[34] "an essential element of a spoliation claim is the intent of the party alleged to be a spoliator, which ... must be greater than the general negligence standard."[35]

In their brief, the Plaintiffs argue that "three distinct statutorily-created maxims" gave rise to a duty to preserve" Arps' notes: the federal regulations promulgating Title VII (29 C.F.R. Section 1602.14), LSU's General Retention Schedule, and Louisiana's Public Records Act.[36]  The Court disagrees.

The EEOC preservation notice, 29 C.F.R. Section 1602.14, states that "the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or action."  LSU has defined "personnel records" in Policy Statement 40 as follows:

> [a]ny record maintained in any administrative office of the University in connection with the recruitment and employment of any person whether the record is stored in printed or written form, micrographically, electronically or otherwise.  Such records include but are not necessarily limited to letters of application, personal resumes, letters of recommendation, academic records, materials furnished by a placement service, appointment forms, records of promotion or other changes in status subsequent to appointment, salary raises, leave accrual, uses and balances any other personnel action processed through the Office of Human Resource management, performance evaluations, and correspondence in the employee's personnel folder between the individual employee and any administrative office of the University.[37]

Here, Arp attested to the fact that he only took notes during the faculty meetings so he could "make notations of the discussion that is going on so that [he could] use that as a form or format to write [his] summary letter."[38]   In this case, the Court finds that Arp's

---

[34] In *Reynolds v. Bordelon*, 14-2362, (La. 6/30/15), 172 So.3d 589, the Louisiana Supreme Court held "that no cause of action exists for negligent spoliation of evidence." *Id.* at 592.
[35] *Tomlinson*, 2015-0276, at pp. 9-10; 192 So.3d 153, at 160.
[36] Doc. 170, p. 2.
[37] Doc. 54-5, p. 32; Doc. 72-8, p. 6 (LSU Policy Statement 40 (PS-40)).
[38] Doc. 54-4, p. 18.  Arp further stated that his notes were in "no way minutes of the meeting  . . . ."

notes taken for his own personal use, are not "personnel records" as defined by LSU Policy Statement 40.   Nor are such notes to be included in the faculty report that must be prepared pursuant to LSU Policy, PS-36-NT following the faculty panel's discussion and vote.   In particular, the report must include the following: (1) a tally of the vote; (2) the number of panel members who did not vote; (3) the chair's independent judgment and recommendation with regard to the decision; (4) analysis and explanations, as needed, with regard to letters from outside experts, in cases when those are included; and (5) an account of the important factors underlying the panel's recommendation, including minority views, and written statements by those supporting a minority view point when they so choose.[39]   Again, however, notes, such as those taken by Arp in this case, are not required to be included in the faculty report.[40]   Accordingly, the Court finds that Arp's notes were not personnel records subject to the EEOC's preservation notice.

Similarly, LSU's public retention policy applies to "university records", which are defined as follows:

> All of the records of the University, its offices, departments, and bureaus, or collected or preserved by such offices, departments, and bureaus for information or legal value, are University Records.  The personal papers of faculty, officers, and staff of the University, documenting their personal research and professional activities, are not included in University Records.[41]

Based upon the foregoing definition, the simple fact that Arp was an employee of LSU is not enough to show that his notes taken during the faculty panel discussions qualified as

---

[39] Doc. 60-3, pp. 17-18. (PS-36-NT).
[40] *See also*, Affidavit of Margaret "Mimi" Singer who attested to the following: "6. Notes taken by faculty members during faculty panel discussions are not included in any record maintained by Louisiana State University."  Doc. 72-8, p. 1.
[41] Doc. 72-8, p. 3.

"university records."  Rather, the focus of the analysis is on the documents, or in this case the notes, themselves.

As previously discussed, Arp was not required to take notes during the faculty panel discussions.  Arp's notes were taken for his own personal use while participating in a professional activity—a faculty panel discussion—to assist him in preparing the faculty report; therefore, Arp's notes were not collected or preserved by LSU or any of its offices, departments, or bureaus.[42]  In other words, LSU lacked control over Arp's notes, because they were personal in nature.  Accordingly, the Court finds that the LSU had no duty to retain Arp's notes because they were not subject to the university's public retention policy.

For similar reasons, Plaintiffs' argument that the Public Records Act placed a duty upon LSU to preserve Arp's notes likewise fails.  Although LSU acknowledged that, "as a public entity, all of our documents are subject to public records,"[43] for those reasons previously discussed, Arp's notes are not university documents, but his own personal documents.   Therefore, Arp's personal notes are not subject to Louisiana's Public Records Act.[44]

Based on the foregoing, the Court finds that the evidence demonstrates that LSU had no duty or obligation to preserve Arp's notes, and there is no genuine dispute of

---

[42] *See also*, Affidavit of Margaret "Mimi" Singer who attested to the following: "5. Louisiana State University does not collect, maintain, or preserve notes taken by faculty members during faculty panel discussions." Doc. 72-8, p.1.

[43] Margaret "Mimi" Reubsamen testified during her deposition that, "as a public entity, all of our documents are subject to public records."  Doc. 54-5, p. 39.

[44] La. R.S. 44:1 defines "public records" as "[a]ll books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained on electronic data processing equipment, having been used, being used in, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution of the laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body…."

material fact as to this particular element of Plaintiffs' spoliation claim.   Accordingly,

Plaintiffs' spoliation claim must fail.

And yet, even if the Court had concluded that LSU did have such a duty, Plaintiffs'

claim would still fail because they have shown no injury, and are thus, not entitled to any

damages.[45]  "Spoliation constitutes a tort action against someone who has impaired the

party's ability to institute or prove a civil claim due to negligent or intentional destruction

of evidence."[46]  Plaintiffs alleged that Arp's notes "would reflect discussion of Herster's

protected activities under La. R.S. 23:967 and Title VII as a reason for non-

reappointment."[47]  Nevertheless, the inquiry on injury is whether the Plaintiffs have been

impaired in their ability to, at this stage, prove their civil claim.   As the Defendants

correctly point out in their memorandum, Arp's notes were not the only evidence of the

faculty panel discussions.   There were approximately twenty other faculty members

present at the two meetings,[48] and, in addition to Arp, Plaintiffs have identified at least

one other faculty member, Denyce Celentano, who is expected to testify at trial.[49]

Plaintiffs' supplemental brief further identifies other evidence they have relied upon to

support their claims.[50]  Therefore, the Court finds that the Plaintiffs have been not been

impaired in their ability to prove Herster's remaining state whistleblower and Title VII

---

[45] As previously noted, the parties were also ordered to brief the issue of causation and damages as to the Plaintiffs' spoliation claim.  See infra note 3.
[46] *Aymond v. American Nat. Property and Cas. Co.*, 48,615 (La.App. 2 Cir. 11/20/13), 130 So.3d 10, 14.
[47] Doc. 3 (*Amended Complaint*).
[48] Doc. 61-9, p. 13. (Arp's Report issued following March 21, 2012 meeting reflected 22 faculty members were in attendance), and p. 18 (Arp's Report issued following May 2012 meeting reflected 22 faculty members in attendance).
[49] At the time the parties had filed their respective briefs in response to the Court's *Notice*, Plaintiffs had identified Denyce Celentano as a May Call Witness.  Doc. 121.  Doc. 72-4 and 91-3,
[50] Doc. 170, pp. 10-12.

retaliation and discrimination claims.    Accordingly, the Plaintiffs' spoliation claims shall be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Margaret Herster's FMLA retaliation claims asserted against A.G. Monaco, Jennifer Normand, and Mimi Ruebsamen, in their individual capacities, are hereby dismissed with prejudice.

It is further ordered that Margaret Herster and Scott Sullivan's spoliation claims are hereby dismissed with prejudice.


Signed in Baton Rouge, Louisiana, on November 21, 2016.


**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**